UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CRAIG A. BROWN, | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | 2:10-cv-00523-GZS |
| | ) | |
| MICHAEL FERRARA, et al., | ) | |
| | ) | |
|     Defendants | ) | |

### RECOMMENDED DECISION ON
### CAMDEN DEFENDANTS' MOTION TO DISMISS[1]
### (Doc. No. 33)

Nine individuals in this fifty-nine count, twenty-one defendant lawsuit collectively identify themselves as the "Camden Defendants." They have jointly moved to dismiss this complaint claiming that res judicata bars re-litigation of issues or claims that were, or could have been, presented in a prior litigation in this Court. The Camden Defendants list as additional grounds for dismissal the following: (1) improper service[2]; (2) failure to join necessary parties[3]; and (3) a statute of limitations defense as to any conduct occurring prior to December of 2004. (Mot. to Dismiss, Doc. No. 33.) For reasons that follow, I recommend that the Court grant the motion in part and dismiss all of the claims against the Town of Camden and certain other Camden defendants, and significant portions of the complaint as to the remaining defendants.

---

[1] Further background to this litigation exists in the two other recommended decisions I have issued at the same time as this one. In all, seven dispositive motions were simultaneously referred for report and recommendations pursuant to 28 U.S.C.§ 626(b).

[2] This argument would be relevant to Nims, Roberts, and Hall, the sole defendants against whom I have not recommended complete dismissal. I am not convinced that the motion has adequately developed an argument that these three defendants are entitled to dismissal because "the complaint when served failed to include attachments referenced in the complaint." (Mot. to Dismiss at 3.) Defendants do not make any further reference to improper service or cite any cases that would indicate that such a failure, if true, should result in complete dismissal of the action at this stage of the proceedings.

[3] The "corporate defendants" are a group of co-conspirators in the RICO conspiracy and perhaps the § 1985 conspiracy. The complaint promises that they will be served at a later juncture. I seriously doubt that they are "necessary" parties in any sense of the word and given my recommendation that those claims be given brevis consideration as to all defendants, I see no reason to base dismissal on this ground.

What would remain, in effect, are post-December, 2004, 42 U.S.C. § 1983 claims (and related state law tort claims) against Camden's planning and zoning/code officer, Jeff Nims, its police chief, Phil Roberts, and one police sergeant, Jason Hall.

**MOTION TO DISMISS STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). To properly allege a claim in federal court, it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Because Brown is a *pro se* litigant, his complaint is subjected to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972), and his pleadings may be interpreted in light of supplemental submissions, such as his responses to the motions to dismiss, Gray v. Poole, 275 F.3d 1113, 1115 (D.C. Cir. 2002); Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003).

The defendants' assertion of claim preclusion and a statute of limitation defense are appropriately advanced by means of their Rule 12(b)(6) motion. Glenwood Farms, Inc. v. O'Connor, 666 F. Supp. 2d 154, 174 n.14 (D. Me. 2009) (citing Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008) (Rule 12(b)(6) and res judicata));

Santana-Castro v. Toledo-Davila, 579 F.3d 109, 113-14 (1st Cir. 2009) (Rule 12(b)(6) and statute of limitation).

**FACTUAL BACKGROUND**

Craig Brown has commenced a far-reaching civil rights conspiracy suit against a collection of individuals, two municipalities, two municipal police forces, area attorneys and surveyors, and others as a consequence of a boundary dispute between himself and a neighbor in the Stonehurst Subdivision in Camden, Maine. That boundary dispute turned ugly in 2003 when the neighbor decided to erect a fence along the boundary. Eventually, in 2009, Brown responded by removing a portion of the fence. Brown suspects that the boundary pins had been relocated in 2003 and that the subdivision developers had an interest in the dispute because their construction firm had performed the excavation work and erred with respect to a set-back covenant when it came to Ferrara's residence. What might have remained exclusively a civil dispute gained a criminal dimension when the neighbor involved the police, alleging an assault by Brown. The conflict spawned another criminal matter when Brown decided to dismantle the fence. The police charged criminal mischief and none of the state litigation, civil or criminal, panned out in Brown's favor. Brown believes that his neighbor, his neighbor's attorney, the men who developed the subdivision, their surveyor, his own surveyor and attorneys, the Camden police, the Town of Camden as zoning authority and public safety provider, certain district attorneys, the Town of Rockport and its police and town manager, and others have conspired against him to make certain that he is deprived of due process, liberty, property, and peace of mind.

In his response to the motion, Brown describes difficulties associated with life in the Stonehurst Subdivision that are not limited to legal difficulties arising from a self-help approach to a boundary dispute, including plaints about set-backs, height-limitations, and boat trailer

storage. He complains of being "sport" for his neighbors, for the subdivision developers, for the local police and prosecutors, for the court system, and for legal and surveying professionals he has turned to for assistance. He compares his difficulties to Frodo's[4] mythic quest to destroy the One Ring in the fires of Mount Doom, minus the fellowship. (Doc. No. 51 at 6.)

The motion to dismiss addressed herein concerns the allegations pertaining to the Town of Camden, Officer Curt Andrick, Sergeant Randy Gagne, Sergeant Jason Hall, Chief Phil Roberts, Town Manager Roberta Smith, Town Planner / Code Enforcement Officer Jeff Nims, and developers and former selectpersons Parker Laite, Sr. and Parker Laite, Jr. I recommend herein that the Court dismiss all of the claims against these defendants except for the claims against Defendants Nims, Roberts, and Hall that arise from events in 2009 and thereafter. For reasons set out in another recommended decision on motions filed by the "Rockport Defendants" and Defendants Ronson, Gale, and Richards & Cranston, the Court should also dismiss all of the RICO and civil rights conspiracy theories for failure to state a claim. Parties dismissed from the federal portion of the case should be relieved of the burden of defending against state law claims in this forum, except to the extent that state law claims are time barred. The time-barred state law claims against Andrick, Gagne, Laite, Jr. and Laite, Sr. should be dismissed, with prejudice, in the interest of judicial economy, even though the Court has declined to exercise supplemental jurisdiction over the state law claims relating to the Town of Camden, both in the prior litigation and in this recommended decision.

*The Prior Litigation*

In a prior action styled <u>Brown v. Town of Camden, 2:10-cv-00063-GZS</u>, filed February 12, 2010, Brown indicated that his claims involved repeated violations of his constitutional rights

---

[4] Brown incorrectly attributes the quest to Bilbo Baggins, Frodo's uncle and protagonist of The Hobbit. Although Bilbo found the Ring deep beneath the Misty Mountains, he did not participate in the quest to destroy it and only reluctantly relinquished the Ring to Frodo.

related to land fraud and local corruption over a nine year period in Camden, Maine. The Town of Camden and two state prosecutors were the only named defendants. The nucleus of operative facts involving the Stonehurst Subdivision in Camden, the erection of a fence by Brown's neighbor, Michael Ferrara, its subsequent removal by Brown, and the ensuing criminal prosecution for criminal mischief are identical to the facts alleged in this complaint. The current complaint offers more defendants, more conclusory accusations, many more legal theories for recovery, and nothing new in terms of factual averments related to the Town of Camden.

The prior suit ended with a court order dismissing the federal claims against the Town of Camden with prejudice. (Order Affirming the Rec. Dec. of the Mag. J. on Mot. to Dismiss for Failure to State a Claim, Case No. 2:10-cv-000063-GZS, Doc. No. 26.) I can imagine no cleaner example of the doctrine of res judicata.

## DISCUSSION

> "Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." Apparel Art Int'l, Inc. v. Amertex Enters. Ltd., 48 F.3d 576, 583 (1st Cir. 1995) (footnote omitted). Res judicata "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and . . . encourage[s] reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94 (1980). The elements of a res judicata claim under federal law are: "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortgage Bankers Corp.), 324 F.3d 12, 16 (1st Cir.2003). . . . We apply a "transactional approach" to the second prong of this test: "The necessary identity will be found to exist if both sets of claims- those asserted in the earlier action and those asserted in the subsequent action- derive from a common nucleus of operative facts." Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir.1994) (citation omitted).

Breneman v. U.S. ex rel. F.A.A., 381 F.3d 33, 38 (1st Cir. 2004).

***The Town of Camden***

The federal claims in Brown's prior litigation were dismissed with prejudice and no

5

appeal has ever been taken from that determination. Thus, the doctrine of res judicata bars Brown from relitigating any federal claims against the Town of Camden that arise from this same nucleus of operative facts, including RICO and civil rights claims. The Town of Camden is entitled to judgment as a matter of law and this Court should decline to exercise supplemental jurisdiction over any state law claims against the Town of Camden asserted in the complaint. The other eight defendants will have to be analyzed individually, based upon the complaint allegations and the relationship they bear to complaint allegations against the Town of Camden.

*Curt Andrick*

Curt Andrick is a Camden police officer who was involved in Brown's arrest for assault in 2002. (Compl. ¶ 18.) In September of 2001, Brown complained repeatedly, both verbally and in writing, to Curt Andrick about "harassment" related to Ferrara's alleged violation of protective covenants of the Stonehurst Subdivision. (Id. ¶ 192.) During this same time period, Andrick allegedly refused to take action and distorted police reports[5] when Brown went to the police for assistance. (Compl. ¶ 194.) On the other hand, it is alleged that Andrick and others were receptive to Michael Ferrara's report about an assault allegedly committed by Brown on December 26, 2002, even though Brown told Andrick that Ferrara's report was false. Andrick not only arrested Brown; he also allegedly failed to include Brown's version of events in his police report. (Id. ¶¶ 201-203.)

As the Camden defendants note (Mot. to Dismiss at 3, Doc. No. 33), there is a six-year statute of limitation governing civil rights actions in the State of Maine. A civil rights claimant needs to pursue his or her claims in a timely fashion. Federal civil rights claims do not remain viable indefinitely. If the claimant does not timely pursue his or her cause, the defendant obtains

---

[5] See Landrigan v. City of Warwick, 628 F.2d 736, 744 (1st Cir. 1980) (noting that the existence of a false police report, without more, does not deprive a person of a right secured by the constitution.)

an affirmative defense that will prevent the court from granting the requested relief. Cao v. Puerto Rico, 525 F.3d 112, 115 (1st Cir. 2008). Claims under sections 1983 and 1985 of the Civil Rights Act are subject to the statute of limitation that applies in the forum state to personal injury claims. Id.; Rodriguez-Garcia v. Mun. of Caguas, 354 F.3d 91, 96 (1st Cir. 2004). In Maine, the forum of this dispute, the limitation period is six years. Small v. Inhabitants of the City of Belfast, 796 F.2d 544, 546-47 (1st Cir. 1986). When it comes to the limitation of actions, the clock runs from the accrual date for the cause of action in question. The accrual date is "the date when the potential plaintiff knew or should have known that she was harmed." Cao, 525 F.3d at 115.

All of the claims against Andrick, both state and federal, are time barred on their face and must be dismissed with prejudice. Andrick is entitled to dismissal with prejudice of all counts in the complaint that run against him based on the factual allegations put forth by Brown.

*Randy Gagne*

Randy Gagne is a Camden police sergeant who was involved in Brown's 2002 assault arrest. (Compl. ¶ 17.) After the December 2002 assault incident with Ferrara, Brown went to the Camden police station and overheard Gagne and Parker Laite, Jr. discussing the incident, but they immediately stopped talking when Brown entered the station. (Id. ¶ 105.) Brown complained repeatedly to Gagne about the violations of protective covenants of the Stonehurst Subdivision and alleged irregularities in the engineering report associated with the subdivision plan. (Id. ¶ 192.) During this time period, Gagne allegedly altered police reports and failed to follow up on Brown's complaints of harassment. (Id. ¶ 194.) Brown told Gagne that Ferrara's claims regarding the assault were false. (Id. ¶ 201.) Nevertheless, Gagne participated in the 2002 arrest. (Id. ¶ 202.)

7

All claims against Gagne, both state and federal, must be dismissed for the same reasons as set forth in the discussion about Andrick. Both police officers are only mentioned in the complaint in connection with the 2002 assault incident and any claim against them expired prior to December of 2010.

*Jeff Nims*

Jeff Nims is Camden's zoning officer. (Id. ¶ 14.) According to Brown, Nims uncovered a fraud regarding the lot lines in the Stonehurst Subdivision in 2001 and he sent Brown an engineering report detailing how the Ferrara residence was built too close to the common lot line. (Id. ¶ 175.) Based on Nims's report, Brown alleges as a fact that the Ferrara residence is in violation of a 25-foot setback requirement. Nims allegedly advised Brown to sue Ferrara and "force him to cut off part of his house." (Id. ¶ 96.) Thereafter, Gusta Ronson (a defendant surveyor who was called in by Brown's then counsel) conducted a "simple pin check" and made a report that conflicted with the Nims report. (Id. ¶ 110.) In March of 2009, Brown informed the Camden police chief that he had a letter from Nims identifying the true location of the lot line. (Id. ¶ 241.) Brown relied on the Nims report when he removed Ferrara's fence from what he reasonably believed to be his own property. (Id. ¶ 255(a).) Prior to Brown's removal of the fence, Nims had never made a retraction of the engineering report to Brown or anyone else. (Id.) At Brown's trial for criminal mischief (held in 2010) Nims allegedly made false statements under oath. (Id. ¶ 227.) It is also alleged that Nims made false statements in an affidavit under oath filed by Michael Ferrara in connection with a summary judgment motion filed in state court. (Id. ¶ 287.)

The allegations pertaining to Nims's alleged testimonial misconduct are clearly not time barred, although the statute of limitations defense discussed above would prevent Brown from

8

any recovery based solely upon the 2001 engineering report. In the prior federal action in Case 2:10-cv-00063-GZS, Nims was mentioned in paragraph 72, which described the September 2001 engineering report prepared by him. However, in that case the dismissal with prejudice of claims against the Town of Camden related exclusively to the Town's municipal liability for the conduct of its employees. (Rec. Dec. at 7, Case 2:10-cv-00523-GZS, Doc. No. 21.) The fact that a municipality has no liability for constitutional deprivations allegedly committed by its employees does not mean that the employees themselves might not be subject to liability for committing constitutional violations as individuals.[6] The issue presented by this motion is whether Nims, as the Camden zoning officer, may use the doctrine of res judicata to achieve dismissal of this complaint as to him based upon allegations that he violated Brown's federal constitutional rights when he testified untruthfully at a criminal trial and made a false declaration in an affidavit in a civil proceeding in the 2009-2010 time frame. Nims cannot avail himself of the doctrine of res judicata in these circumstances.

Nims correctly points out that the res judicata analysis is not restricted to reviewing matters actually litigated, but may consider all matters that were considered or should have been considered. (Reply Mem. at 2, Doc. No. 58, citing Dall v. Goulet, 871 F. Supp. 518 (D. Me. 1994).) Nims's analysis is correct, as far as it goes, and certainly the Town of Camden is entitled to dismissal under res judicata principles of all federal claims whether or not they were actually asserted in the prior case. For instance, Brown cannot bring a RICO claim against the Town of

---

[6] I am not suggesting that the allegations against Nims would survive another round of dispositive motions because it is not abundantly clear that Nims's conduct related to the trial testimony and the summary judgment motion actually describes a constitutional violation. See Paul v. Davis, 424 U.S. 693 (1976) (declining to "constitutionalize" common law tort of defamation simply because defendants were state actors.) Whether offering false testimony states a claim for a constitutional violation is not an issue raised by this motion. As for the claims that Nims's conduct was part of a civil rights conspiracy or a RICO conspiracy, the recommended decision I have issued relating to other defendants (the "Rockport Defendants" and Ronson, Gale, and Richards & Cranston Surveyors) would apply equally to Nims and I recommend that those aspects of this complaint be dismissed with prejudice as to Nims as well. The issue of what, if any, individual liability Nims may have as a state actor for a constitutional violation has not been joined in this motion to dismiss.

Camden now when related federal claims arising from these same allegations were previously dismissed on the merits. The doctrine of res judicata prevents a litigant from being subjected to just those sorts of abusive seriatim claims based on the same factual circumstances but changing legal theories.

However, Nims is in a different situation. He was not named in the prior lawsuit and there was no factual finding regarding the allegations in paragraph 72 of that complaint that were necessary to the resolution of the case against the Town of Camden. The "issue preclusion" branch of res judicata does not operate under these circumstances because the issue in question was not actually litigated in the prior proceeding in this Court. Gonzalez-Pina v. Guillermo Rodriguez, 407 F.3d 425, 430 (1st Cir. 2005). As for "claim preclusion," the First Circuit has suggested a two-prong test for determining whether a nonparty can be considered to be in privity with the original party with regard to claim preclusion when subsequent litigation is filed. That two-part test requires this Court to find that the nonparty (here Nims) either substantially controlled the Town of Camden's involvement in the initial litigation, or, conversely, permitted the Town of Camden to function as his *de facto* representative. Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 758 (1st Cir. 1994). There is no basis to find, on these facts, that Nims has met the privity component of the claim preclusion formulation and, therefore, he cannot avail himself of that doctrine to obtain dismissal of the complaint against him.

### *Parker Laite, Sr. and Parker Laite, Jr.*

Parker Laite, Jr. is a former Camden City Selectman and was an executive of Laite Construction when that firm built the Ferrara residence in the Stonehurst Subdivision. He has been an owner of property in the subdivision since 1978. Like his son, Parker Laite, Sr. has also served as a Camden selectman. Laite, Sr. owns Laite Construction and is alleged to be the

developer and co-grantor of protective covenants relating to the Subdivision. (Compl. ¶¶ 8, 10, 11.) Brown describes Laite, Sr. as a wealthy businessman and local bully who has directed the "racketeering" activities of all the defendants in this case. (Id. ¶ 53.) Laite, Sr. and his wife Irene (deceased) were the original developers of the Stonehurst Subdivision in 1987. (Id. ¶ 77.) Brown describes Laite, Jr. as another local bully and adds that the family has resided in Maine for almost 200 years. (Id. ¶ 53.) According to the complaint, Laite, Jr. was involved in fraud related to the sale and development of lots in the Stonehurst Subdivision between 1987 and 2002, allegedly in regard to protective covenants associated with the subdivision parcels. (Id. ¶¶ 53, 173, 174.)

The protective covenants of the Stonehurst Subdivision require that the excavation for any residence built in the subdivision must be performed by Laite Construction. (Id. ¶ 80.) Those covenants contain implied warranties requiring Laite, Sr. to review plans to ensure compliance prior to construction. (Id. ¶ 81.)

In 2002, following a confrontation with Ferrara, Brown went to the Camden police department and overheard Laite, Jr. discussing the incident with Gagne. (Id. ¶ 105.) In 2003, another neighbor (not Ferrara) instituted a lawsuit against Brown related to the storage of boats and boat trailers and Brown then "presented testimony at a mediation session in early 2004" about discussions he had with Laite, Sr. regarding the section of the covenants pertaining to boat trailers. The date of those discussions is not alleged. (Id. ¶ 116.) As Brown sees it, Laite, Sr. participated in the development of properties in the subdivision that violated the protective covenants (presumably referring to the Ferrara residence). (Id. ¶ 173.) Brown alleges that the Laites, with the aid of others, illegally shifted boundary markers within the Stonehurst Subdivision sometime between 2001 and 2002 in an attempt to hide a violation of the protective

covenants arising from their firm's construction activity. (Id. ¶¶ 179, 180.)

Brown further believes that the Laites have pulled strings behind the scenes to influence various state actors to make his life miserable. Here is Brown's theory:

> The Plaintiff believes that this effort by the Camden Police to harass the Plaintiff and deny his Constitutional Rights . . . has been directed by past Camden Selectmen Parker Laite Senior, and Parker Laite Junior. The intent was to allow Ferrara and the Camden and Rockport Police to harass the Plaintiff and the Plaintiff's Wife, Pamela Belanger in order to put the Plaintiff under psychological pressure to defend his Wife and his property in order to force the Plaintiff into taking self help action (cutting down the fence) which might be used to charge the Plaintiff with a crime and into the Maine Criminal Justice System where he would be at the mercy of a corrupt Criminal Defense Lawyer.

(Id. ¶ 242.)

I understand that the theme of Brown's complaint is that the Laites, father and son, were responsible through behind-the-scenes manipulations for the entire series of events that culminated in Brown's 2010 conviction for criminal mischief in the Knox County Superior Court. I recognize why Brown would allege that they had an interest in his boundary dispute with Ferrara and it is plausible that they would be concerned about this dispute due to the involvement of Laite Construction and their interest in the Stonehurst Subdivision. However, I conclude that Brown's claims against the Laites should be dismissed for failure to state a claim because the complaint is devoid of any factual content concerning actions by the Laites taken within six years of the filing date of this litigation. I have carefully combed the complaint for *factual* allegations from which inferences could be drawn, and all of those factual allegations pertain to events in the 1980s and early 2000s, well outside the statute of limitation. As for any inference that the Laites directed or pulled all the strings with regard to legal developments and court proceedings in and after 2004, the factual allegations that do exist do not make that kind of conspiratorial finding plausible.

> Two working principles underlie [the federal pleading standard]. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief."

Iqbal, 129 S. Ct. at 1950 (internal citation omitted). Cognizant of this standard, in my review of this complaint I have given no weight to the legal conclusions scattered throughout the complaint about the possibility of misconduct in various wherefore clauses and conclusory paragraphs. Those conclusions, such as the assertion that the Laites directed and controlled the activities of police, prosecutors and others called as witnesses in state proceedings, are devoid of any factual content. These allegations do not support a plausible inference that the Laites used their positions as selectmen for the Town of Camden (or as local bullies) to deprive Brown of any civil rights enumerated in the United States Constitution. Nor do they support an inference that the Laites engaged in a RICO-style racketeering enterprise. Any factual allegations relating to state law torts also occurred well before December 2004 and are time barred.

*Phil Roberts*

Phil Roberts is the police chief for the Town of Camden and he investigated the felony criminal mischief charge in 2009. He is also the final policy maker for the Town of Camden Police Department. (Compl. ¶ 12.) Judge Westcott of the Rockland District Court issued an order in 2009 that declared that Brown's complaints for orders for protection against the Camden police were frivolous. It is alleged that Judge Westcott imposed a sanction on Brown that

13

prohibited him from filing any further legal actions against Phil Roberts. (Id. ¶ 153.) Brown had only filed one lawsuit against Roberts. (Id. ¶ 154.) Roberts swore (in an unsigned affidavit) that there was probable cause to arrest and prosecute Brown in conjunction with the criminal mischief charge. (Id. ¶ 171.) Roberts was responsible for supervising Randy Gagne and Curt Andrick. (Id. ¶ 187.) Allegedly, Roberts was acting under the direction and control of the Town of Camden, Laite Senior and Roberta Smith. (Id. ¶¶ 188, 216.) Allegedly, Roberts did not properly supervise Gagne, Andrick or other Camden police officers and was part of a scheme to harass Brown, vandalize his property, and put him under psychological pressure to take self-help action to defend himself and his property interest. (Id. ¶¶ 189, 190, 198.) The Town of Camden had statutory responsibility for overseeing the activities of Roberts. (Id. ¶ 235.)

It is alleged that Roberts came to Brown's property in March of 2009 and verbally harassed him, telling him he could not remove Ferrara's fence. Brown told Roberts the lot lines had been moved and that he had a letter from Jeff Nims identifying the true location. (Id. ¶ 241.) After Roberts's first March visit to the property, Brown removed additional sections of the fence as he had informed the Knox County District Attorney's Office he intended to do. Roberts showed up again at the property, this time with Jason Hall who had a video camera to record the damage to the fence. (Id. ¶ 245.) Roberts allegedly "knew" he was making a false arrest. (Id. ¶ 245.) On the other hand, it is alleged that Roberts took Ferrara's (and Ferrara's lawyer's) representations as the truth without exercising due diligence to determine if Brown had reasonable grounds to believe he had the legal right to remove the fence. (Id. ¶¶ 252, 253.) Allegedly, Roberts did not present exculpatory evidence to the Grand Jury that he knew existed. (Id. ¶ 255.) Roberts is also mentioned in other wherefore and conclusory paragraphs, but the major factual assertions are set forth above. The only factual allegation about any contact

14

between the Laites and the Camden police is that Laite, Jr. was overheard talking with a Camden police officer about an assault incident in 2002.

My analysis of the claims against Roberts tracks my analysis of the claims against Jeff Nims and, accordingly, I recommend dismissal of all claims except those allegations about events after December 2004 concerning arrest without probable cause and false testimony in support of criminal process, as well as those state law claims supplemental thereto. Once more, as with Nims, I am not necessarily suggesting that those claims that Roberts withheld exculpatory evidence or made an arrest without probable cause would necessarily withstand a targeted dispositive motion, I am simply of the opinion that those claims cannot be dismissed based on the res judicata and statute of limitation defenses.

*Roberta Smith*

Roberta Smith is identified in the complaint's caption as the Camden town manager. Brown alleges that this gives Smith supervisory authority over the Laites, as selectmen, the chief of the Camden police department, and the department itself. (Id. ¶¶ 6, 8, 186, 235.) Most of the conclusory paragraphs regarding Smith's misconduct squarely lump her with the Town of Camden. (See, e.g., id. ¶ 231 (negligence), ¶ 234 (Civil Rights Act), ¶ 247 (failure to train and supervise and "approval" of arrest and prosecution).)

I can find no individual factual allegations directed against Roberta Smith within the body of the complaint. It appears to me that Brown is simply suing her based on her official status as Camden's town manager. He does not allege that she has done anything other than to have failed to properly supervise, instruct, and monitor other Camden officers and agents. When a town manager, or other official, is sued in her official capacity, it is tantamount to a suit filed directly against the municipal entity itself. Kentucky v. Graham, 473 U.S. 159, 166-68 (1985);

15

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978); Trafford v. City of Westbrook, 256 F.R.D. 31, 33 (D. Me. 2009). Because the claim against Smith is an official capacity claim, she stands in privity with the Town of Camden and can assert the same defenses as the Town, including the Town's successful res judicata defense as to federal claims. Consequently, I recommend that the Court dismiss the federal claims against Brown.

*Jason Hall*

Jason Hall is a Camden police sergeant who investigated the felony criminal mischief charges in 2009. (Compl. ¶ 19.) Hall allegedly submitted a misleading and unsigned affidavit to the Grand Jury, claiming probable cause to arrest Brown. (Id. ¶ 171.) Jason Hall came to Brown's property with a video camera in order to document damage to the fence. Hall allegedly knew he was making a false arrest of Brown and was very nervous, shaking like a leaf. (Id. ¶ 245.) Hall never interviewed Brown before arresting him and never got Brown's side of the story. (Id. ¶ 248.) Hall accepted Baiungo and Ferrara's words as the truth as contained within his police report. (Id. ¶ 252.) Hall allegedly withheld exculpatory material from the Grand Jury. (Id. ¶¶ 254-255.)

My assessment regarding Hall tracks my assessment regarding Nims and Roberts. In other words, I recommend dismissal of all claims except those allegations about events after December 2004 concerning arrest without probable cause and false testimony in support of criminal process. Again, this is simply a recommendation that those claims cannot be dismissed based on the res judicata and statute of limitation defenses.

**Conclusion**

Based upon the foregoing, I RECOMMEND that the Court GRANT IN PART and DENY IN PART the Camden Defendants' motion, as follows:

DISMISS all federal claims against the Town of Camden and Roberta Smith based upon res judicata principles, with prejudice, and DISMISS all supplemental state law claims against the Town and Smith, without prejudice, under 28 U.S.C. § 1367(a), (c)(4).

DISMISS all claims, both federal and state, against Andrick, Gagne, Laite, Jr. and Laite, Sr. because all alleged conduct relating to them occurred outside of the six-year statute of limitations and because the conspiracy allegations concerning more recent conduct are implausible;

DISMISS all claims, both federal and state, against Nims and Roberts that relate to conduct occurring in 2001-2002 and all federal RICO and § 1985 conspiracy theories,[7] but DENY the motion, IN PART, as to all remaining federal constitutional claims premised on individual liability and related state law claims; and

DISMISS all federal RICO and § 1985 conspiracy claims against Hall, but DENY the motion IN PART as to all remaining federal constitutional claims premised on individual liability and related state law claims arising from the 2009 arrest and subsequent prosecution.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being

---

[7] The rationale for the dismissal of all RICO and civil rights conspiracy claims as to Nims, Roberts, and Hall is fully set forth in my Recommended Decision (Doc. No. 81) on the motions to dismiss filed by other defendants at pp. 9-17, and I will not repeat that analysis in this recommended decision. The same rationale applies to Nims, Roberts, and Hall in the context of the allegations of a civil rights conspiracy and a RICO violation made against them in the underlying complaint. They differ from Ronson, Gale, and Richards & Cranston because they are clearly state actors under Section 1983 and it is for that reason that I do not recommend dismissal of the entire complaint. To date, Nims, Roberts, and Hall have not moved for dismissal of the individual claims against them, relying only on the res judicata and statute of limitations arguments. The allegations against them individually do not mirror in any respect the individual allegations against Wesley Butler and the other Rockport defendants and thus that recommended decision cannot be used to justify dismissal of the complaint in its entirety as to these three defendants.

served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

April 28, 2011