UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CRAIG A. BROWN,                         )
                                        )
    Plaintiff                           )
                                        )
v.                                      ) 2:10-cv-00523-GZS
                                        )
MICHAEL FERRARA, et al.,                )
                                        )
    Defendants                          )

**RECOMMENDED DECISION RE:**

**DEFENDANT BAIUNGO'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 26)**
**AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 53)**

Plaintiff Craig A. Brown has sued approximately twenty-one different individuals and entities in connection with a longstanding property dispute between himself and neighbor Michael Ferrara, one of the defendants. His complaint is over eighty pages in length and is a long recitation of various events beginning in 2002 or before. On this raft of defendants is Joseph Baiungo[1], an attorney who represented Ferrara in various state court proceedings. In introductory allegations to various sections of the complaint, Brown states he is asserting fifty-nine claims against the defendants, collectively, although it is not clear that defendant Baiungo is implicated in each and every count of the complaint. (Compl. at pp. 5, 49, 51, 56, 67, 74, 77, 79, 82). The "counts" range from an alleged conspiracy to violate Brown's civil rights to intentional infliction of emotional distress. Baiungo has filed a motion for summary judgment (Doc. No. 26) and Brown has responded to that motion with various pleadings, none of which comply with District of Maine Local Rule 56. (See Doc. Nos. 41, 43, 44.) Additionally, Brown filed his own motion for summary judgment (Doc. No. 53), also without regard for the strictures of Local Rule

---

[1] Baiungo is spelled with an "a" in the original complaint, but in his motion and entry of appearance Baiungo spells his name ending in "o." I have used the defendant's spelling throughout.

1

56. I now recommend that the court grant Baiungo's motion, deny Brown's motion and enter judgment for Baiungo on the complaint.

## SUMMARY JUDGMENT STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The factual statement must be drawn from the parties' competing statements of material facts, filed in accordance with Local Rule 56, and from the record cited in support of those statements. See Doe v. Solvay Pharms., Inc., 350 F. Supp. 2d 257, 259-60 (D. Me. 2004) (outlining the mandatory procedure for establishing factual predicates needed to support or overcome a summary judgment motion); Toomey v. Unum Life Ins. Co., 324 F. Supp. 2d 220, 221 n.1 (D. Me. 2004) (explaining "the spirit and purpose" of Local Rule 56).

Special care should be taken when considering the summary judgment record of a *pro se* plaintiff such as Brown. See Clarke v. Blais, 473 F. Supp. 2d 124 (D. Me. 2007). However, Brown, unlike the plaintiff in Clarke, is not incarcerated. Nor is he attempting to present a straightforward refutation of simple and uncomplicated facts. Brown asks that the Court not deny him summary judgment against Baiungo on "weak technical issues with the motion," but any failure of Brown to comply with accepted summary judgment practice is not a "technical" violation in this case, but rather an abject failure to present satisfactory record evidence disputing the facts set forth by Baiungo. (Pl.'s Reply to Baiungo's Mot. Summ. J. at 5, Doc. No. 71.) Brown's *pro se* status does not relieve him of his duty to comply with rules of procedure or alter the Court's obligation to fairly apply the rules governing summary judgment proceedings. Simpson v. Penobscot County Sheriff's Dept., 285 F. Supp. 2d 75, 76-77 (D. Me. 2003). A key part of this summary judgment review is that "summary judgment may be appropriate if the

nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## The Allegations Pertaining to Baiungo

Baiungo is identified in paragraph 5 of the complaint as a Belfast attorney who represented the owner of the lot abutting Brown's (Michael Ferrara). Baiungo is next mentioned in paragraph 170, where it is alleged that Baiungo and Ferrara "were instrumental in starting the process of false arrest" as well as the criminal process that ultimately resulted in the Knox County Grand Jury returning an indictment against Brown. According to Brown, Baiungo and Ferrara performed these acts in league with the Camden Police and the Knox County District Attorney in an "extortion attempt" to force Brown to give up his property rights. (Compl. ¶ 171.) These alleged actions occurred in 2009 and underlie Count 36 of the complaint, which purports to be a claim of "Filing False and Inaccurate Police Reports" to initiate "False Arrest and Prosecution," all in violation of 17-A M.R.S. §§ 453 (unsworn falsification) and 805 (aggravated criminal mischief). (Compl. p. 56.) Brown explains that Baiungo's false report involved Baiungo's assertion on behalf of his client that the fence sections removed by Brown were on Ferrara's property. (Compl. ¶ 241.) The legal consequences of Brown's removal of this fence and the underlying question of whether the fence was on Brown's property or the neighbor's appear to be at the heart of this dispute.

In paragraphs 252, 253, and 255, Brown again mentions Baiungo by name, but the allegation is against the Town of Camden, which Brown faults for accepting Baiungo's words as the truth without exercising "due diligence." At the conclusion of this section of the complaint, which appears to be directed primarily at the Town of Camden and its police officers, Brown

3

offers a conclusory claim that he suffered physical injury, loss of income, mental anguish, and deprivation of certain constitutional rights as a consequence of Baiungo's negligence and "false arrest." (Compl. ¶ 256.) In his wherefore clause attached to this paragraph, Brown indicates he is seeking Baiungo's indictment, to be followed by a prison sentence of two years. (Id. p. 66.)

Baiungo's name next appears in connection with Count 41 at page 67 of the complaint. There, Brown asserts a claim for "civil perjury" in violation of 14 M.R.S. § 870. Said perjury allegedly occurred in 2009 at a hearing in the Rockland District Court involving an order for protection. The next accusation relating to Baiungo asserts that he and Ferrara, along with the Knox County District Attorney, offered Brown's attorney a "deal" whereby, if Brown let Ferrara put the fence back up, the DA would not prosecute Brown. (Compl. ¶ 261.) Brown characterizes this "deal" as Baiungo's "first attempt" to use the threat of felony prosecution to "extort and defraud property rights" from Brown. (Id. ¶ 262.) According to Brown's conclusory allegations, this "collusion" between his own attorney and Baiungo and others constitutes a conspiracy against rights, fraud against the court, obstruction of justice, professional misconduct by lawyers, and retaliation against a victim/witness. (Id. ¶ 264.)

Baiungo's "second attempt to defraud" Brown allegedly occurred when Baiungo misrepresented the contents of an order for protection form Brown signed. According to Brown, Baiungo subsequently modified the form to state that Brown had agreed to let Ferrara put his fence back. (Id. ¶ 265.) During the hearing about the order for protection, Baiungo attempted to bring a surveyor into the courtroom to testify about the boundary line location, but the judge denied Baiungo that opportunity because Brown had not had any time to prepare for the testimony. (Id. ¶ 266.) Brown then recounts his difficulty in obtaining attorneys to represent his side of that case. He next faults Baiungo for filing a motion for summary judgment in a separate

4

state action relating to fence removal. That motion was granted. (Id. ¶ 268.) On information and belief, Brown asserts that Baiungo "may" have been contacting surveyors and lawyers and this may explain why he could not find a surveyor to assist him with the case. Brown alleges that a surveyor would have had to contact the abutting landowner before undertaking professional work on the property and this would give Baiungo information about the surveyors he had contacted. (Id. ¶ 270.) According to Brown, these allegations of "civil perjury" against Baiungo entitle him to monetary damages and an order for Baiungo's imprisonment. (Id. ¶ 282.)

Baiungo is next mentioned in a conclusory paragraph asserting that he inflicted emotional distress on Brown. (Id., ¶¶ 298, 299.) According to Brown, this outrageous conduct by Baiungo, which Brown views as instrumental in his own arrest, merits punitive damages. (Id. ¶ 310.) The complaint contains no further allegations concerning Baiungo's conduct. These allegations have been set forth simply to give some perspective on the material facts submitted by Baiungo. Further perspective is supplied by the facts associated with prior litigation involving Brown.

### Brown's Prior Litigation in State Court

Although not set forth in concise form anywhere in this record, there appear to be at least four prior court cases involving Brown and the subject matter of this lawsuit. Those four cases are:

> Brown v. Town of Camden, et al., 2:10-cv-00063-GZS, (federal claims dismissed with prejudice);
>
> Michael Ferrara, Trustee v. Craig Brown, RE-09-10, Maine Superior Court, Knox County (real estate action involving claims of trespass and a boundary dispute);
>
> Ferrara v. Brown, ROCDC-PA-2009-00047, Rockland District Court (complaint for protection from harassment); and
>
> State of Maine v. Craig Brown, ROCSC-CR-2009-00083, Knox County Superior Court (indictment for aggravated criminal mischief and conviction on lesser included class D criminal mischief following March 4, 2010, jury verdict).

5

The record also makes passing reference to a fifth case, Brown v. Peabody,[2] ROCDC-PA-2008-00244, Rockland District Court (summons found at Doc. No. 55-1), which apparently related to Brown's claim that the Rockport Police Department harassed him for driving with an expired inspection sticker as the result of a conspiracy involving the Camden Police Department and Ferrara. Of these proceedings, the only records attached to Baiungo's statement of material facts come from the protection from harassment proceeding. However, Baiungo later attached a copy of the summary judgment decision on the boundary question when he filed his reply memorandum (Doc. No. 52).

## Material Facts

Baiungo's statement of material facts is straightforward and concise, consisting of ten paragraphs. His statements are supported by his own affidavit (Doc. No. 27-1), the Knox County Superior Court decision and judgment in case number RE-09-10 (Doc. No. 52), and Maine District Court docket entries and a motion to vacate filed by Brown in case number ROCDC-PA-2009-00047 (Doc. Nos. 27-2, 27-3). Based on those documents:

1. Baiungo never made any statements to the police or the District Attorney's office that he did not believe to be true;

2. The courts of the State of Maine have determined that the fence in question is, and has been, on the property of Michael Ferrara;

3. Baiungo did not make changes to any court documents after Brown signed them;

4. The Maine District Court ruled that Brown validly signed the agreed upon protection order;

5. Baiungo did not conspire with John Gale, Geoff Rushlau, or Lindsay Jones;

---

[2] This incident forms the basis of Brown's claims against the so-called "Rockport defendants" in the body of the eighty-plus-page complaint. These defendants have filed their own motion to dismiss (Doc. No. 36). The merits of that motion are obvious, but beyond the scope of this recommended decision. This complaint does not state a constitutional claim against the Town of Rockport or any of its employees under any pleading standard imaginable, and certainly not under Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).

6. Any statements made by Baiungo in his discussions with Gale, Rushlau or Jones were truthful and were an attempt to allow Ferrara to do what he had a right to do;

7. Baiungo never attempted to prevent Brown from doing anything which Brown had a legal right to do;

8. Baiungo did not make any threats of criminal prosecution to Brown;

9. Baiungo does not have any control over the prosecutorial decisions or discretion of the District Attorney's Office; and

10. In a previous court action referenced in Brown's Complaint, Brown alleged that changes were made to the agreed-upon protection order *before* he signed it.

(Baiungo Statement, Doc. No. 27.) Plaintiff's response to this brief and straightforward presentation is anything but. In addition to his responsive memorandum (Doc. No. 41), Brown offers a responsive statement and a statement of additional facts (Doc. No. 44), in the form of an eleven-paragraph broad general denial signed under oath, and a fourteen-paragraph statement of additional facts, also submitted under oath. (Doc. No. 44-1.) Brown has also filed a three-part affidavit (Doc. No. 43) which begins with events in 1998 and has to do in large part with what Brown perceives as the merits of his claims regarding the property dispute. Brown never refers to this affidavit in his original responsive summary judgment pleadings, but in a later clarification (Doc. No. 60) does reference Affidavit No. 2 (Doc. No. 43-1) which recounts Brown's version of the Maine District Court protection order process. On February 10, 2011, Brown filed what he calls clarifications and additional attachments in relation to Baiungo's motion for summary judgment. The only one of Baiungo's statements that Brown's submissions directly challenge with something of evidentiary quality[3] is paragraph 3, in which Baiungo says he did not make any changes to court documents after

---

[3] Baiungo and Brown both have personal knowledge of the events surrounding the signing of the order and their diametrically opposed versions are both made under oath. A review of Brown's Doc. No. 60, a "clarification" submitted outside the parameters of the Local Rule, demonstrates that he has attempted to refute the other statements of fact in Baiungo's motion by asking this court to draw improbable and generally unsupportable inferences from the various documents he has submitted. For instance, Doc. No. 62-2 is a motion for Judge Hjelm's recusal apparently filed by Brown in the criminal case in Knox County. Baiungo relies on an earlier judgment issued by Judge Hjelm in a real estate case for his statement of fact regarding the court's findings regarding the location of the

7

Brown signed them. In Brown's affidavit he avers that Baiungo changed the agreed-to order after Brown signed it. (Doc. No. 43-1, ¶¶ 10-12.) At least this exchange is something about which both Brown and Baiungo can claim personal knowledge.

Brown has also filed his own motion for summary judgment. It consists of a nine- paragraph declaration (there are two paragraphs numbered 3) signed under oath by Brown relating primarily to legal conclusions about the planning board process and state court judgments. Baiungo is mentioned once in the motion, at paragraph 8, which states: "The Plaintiff seeks $2,000,000.00 in damages from Joseph W. Baiung[o] for illegally taking action to seize part of plaintiff's property in violation of his Civil Rights of Due Process per 42 U.S.C. § 1983." Clearly, Brown's evidentiary showing on his own motion would not entitle him to summary judgment, even if the court ultimately determines that he has somehow generated a dispute of material fact that would prevent judgment being entered against him and in Baiungo's favor.

## DISCUSSION

Baiungo's summary judgment motion parses the complaint and concludes, correctly I believe, that Brown has asserted three basic claims against him: (1) Baiungo made false statements regarding the property boundaries, unleashing a chain of events that ultimately culminated in Brown's arrest and criminal conviction; (2) Baiungo was engaged in a conspiracy with the other defendants to falsely arrest Brown and deprive him of his property in violation of Brown's civil rights; and (3) Baiungo altered court documents in the context of the Maine District Court protection from harassment proceeding. The first two claims are easily disposed of on this summary judgment record. Brown has presented absolutely no evidence, direct or circumstantial, that Baiungo knew that any of the claims he asserted on behalf of his client were false. Brown has spent a great deal of energy submitting exhibits regarding the planning board process, subdivision law, and surveyors'

---

fence. (Doc. No. 27, ¶ 2.) Brown apparently wants this court to infer that his motion for recusal generates an issue of material fact about the validity of the finding that Baiungo relies upon in support of his motion.

conclusions. The record, viewed most favorably to Brown, demonstrates a genuine dispute about the claims asserted by Ferrara in prior real estate litigation, but that evidence does not support an inference that Baiungo knew the claims he made on behalf of his client in that prior litigation were false. In fact, the record evidence demonstrates that Baiungo had an evidentiary basis for the claims he made about the property boundary and the fence removal. Obtaining victory for a client by filing a motion for summary judgment is not an actionable offense.

Nor does this complaint plead an actionable civil rights or RICO conspiracy under <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009). Rushlau and Jones (Knox County district attorneys), the two state actors implicated in the alleged conspiracy with Baiungo, have been granted judgment against Brown based on absolute prosecutorial immunity and a prior federal case against them arising from the same allegations as this case has been dismissed with prejudice. <u>Brown v. Town of Camden</u>, No. 2:10-cv-00063 (D. Me. 2010). The bare allegation that Baiungo engaged in a RICO or civil rights conspiracy with them or with Jon Gale (Brown's own attorney) does not even pass the straight face test, let alone the plausibility standard applicable under federal law. There are no *facts* alleged that would support such a claim, merely conclusory language on the part of Brown. Baiungo is indisputably entitled to judgment as a matter of law as to those portions of the complaint that purport to state a cause of action based upon an alleged conspiracy with Rushlau, Jones, and Gale.

The third claim, that Baiungo altered court documents (presumably a state law fraud-type claim), presents a closer factual question on these pleadings, but Brown has presented no sound argument to refute the notion that he is collaterally estopped from claiming damages based upon Baiungo's alleged alteration of the agreed-to protection from harassment order. A review of the docket entries from the Rockland District Court determines this issue. On April 17, 2009, the final harassment order was entered. On May 11, 2009, Brown filed a motion to vacate the order,

9

claiming, as he has in this lawsuit,[4] that Baiungo added certain words to the order without his knowledge or consent. The judge who signed the agreed-to order on April 17, Judge Michael Westcott, was the same judge who ruled on the motion to vacate. On May 11, 2009, Judge Westcott entered the following order on the motion to vacate: "Order presented to Court in open court. Both parties signed order. Court asked if this was acceptable. Mr. Brown said yes. He is bound by his statement." The docket further reflects than on January 4, 2011, Brown filed another request for relief which was denied by Judge Westcott with the following summary notation: "Denied. Order has not been appealed. No Rule 60 motions have been filed."

To the extent that the allegations of Brown's current complaint pertain to actions taken by Baiungo in relation to the alleged alteration of the protection from harassment order, either before or after Brown signed it, Brown is precluded from re-litigating those claims in this forum. Whether Brown claims that the alteration of the court order forms the factual predicate for either federal claims or state law claims, the law is clear that Baiungo is entitled to rely upon the final determination of the state court finding that Brown signed the order in open court and indicated to the court that the order as entered on the docket was satisfactory to him. Baiungo, although not technically a party to that prior litigation, may avail himself of the benefit of the prior final order under the doctrine of issue preclusion.

A federal court "must give the same preclusive effect to issues already decided as would be given by the courts of the state in which the federal court sits." Cinelli v. Revere, 820 F.2d 474 at 479 (1st Cir. 1987). Maine law holds that issue preclusion, or collateral estoppel,

---

[4] Whether the words were added before or after Brown signed the consent order appears to be in flux. The version recounted in the motion to vacate appears to be that Baiungo took the order before Brown signed it and then brought it back to Brown for his signature after substituting the newer version and without allowing Brown adequate time to review it. The new assertion in the complaint is that the proposed order was modified by Baiungo after Brown signed it. The fact that Brown has two versions of the tale does not change the basic allegation against Baiungo, that he somehow impermissibly altered a court order. The inconsistency simply goes to the credibility of Brown's various versions. For purposes of this motion I assume the version set forth in the complaint is the proper allegation.

10

"prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." Portland Water Dist. v. Town of Standish, 2008 ME 23, ¶ 9, 940 A.2d 1097, 1100 (Me. 2008) (citing Macomber v. MacQuinn-Tweedie, 2003 ME 121, ¶ 22, 834 A.2d 131, 138-39). Collateral estoppel concerns factual issues, and applies even when the two proceedings offer different types of remedies. Id. A party has a fair opportunity to litigate an issue if that party either controls the litigation, substantially participates in that litigation, or could have participated in the litigation had he chosen to do so. State v. Hughes, 2004 ME 141, ¶ 5, 863 A.2d 266, 269 (citations omitted). Baiungo has met his burden of showing that there is a valid final judgment that actually determined the issue of whether Brown knew what he was signing. The record reflects that Brown actively participated in that litigation, specifically filing the motion that raised the factual issue of whether he had been somehow duped into signing an altered document. Brown cannot re-litigate those facts in this forum, no matter how genuinely he disputes the factual predicates set forth in Baiungo's motion. He is the person who specifically joined the factual issue in the prior litigation by filing his motion to vacate that judgment.

Although not raised by either party, one lingering question needs to be addressed. Baiungo was clearly not a party to the prior litigation wherein Judge Westcott made the explicit factual finding entered on the record. Nevertheless, under Maine law he may use the doctrine of collateral estoppel, or issue preclusion, in his defense to this lawsuit.

> Mutuality of parties is not required for issue preclusion. As plaintiffs concede in their brief, their argument that the parties to the prior action must be identical for issue preclusion to arise finds no support in Maine law. See Hossler v. Barry, 403 A.2d 762, 767 (Me. 1979) (finding mutuality of parties unnecessary for application of issue preclusion).

11

Miller v. Nichols, 586 F.3d 53, 60 (1st Cir. 2009) (omitting treatise citation). The defensive use of issue preclusion in a situation such as this one is entirely permissible.

## Conclusion

Based upon the foregoing, I RECOMMEND that the Court GRANT Defendant Baiungo's motion for summary judgment, DENY Plaintiff Brown's motion for summary judgment, and enter judgment for Baiungo.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

April 28, 2011