UNITED STATES DISTRICT COURT
DISTRICT OF MAINE


| CRAIG A. BROWN,            | )                      |
|                            | )                      |
| Plaintiff                  | )                      |
|                            | )                      |
| v.                         | ) 2:10-cv-00523-GZS    |
|                            | )                      |
| MICHAEL FERRARA, et al.,   | )                      |
|                            | )                      |
| Defendants                 | )                      |

**RECOMMENDED DECISION ON COFFIN ENGINEERING'S MOTION
FOR SUMMARY JUDGMENT (Doc. No. 74)**

This is not the first time this court has addressed dispositive motions in this ongoing property dispute between Brown and his neighbor Michael Ferrara. Poet Robert Frost reflected that fences, of the rock-wall sort, make good neighbors, but in his poem Mending Walls, he also suggested that when neighbors "walk the line" at least one of them might ponder whether '[s]omething there is that doesn't love a wall." I can now attest, based on this current litigation, that neighbors are not always successful in attempts at reconciling differences about fences, whether they are trying to fence the apple trees, the pine cones, or the cows. Indeed, as Frost remarked, sometimes it is hard to know what is being walled in or walled out. Yet, the dispute over this fence has been in the making since at least 2002 and it does not appear likely to be resolved anytime soon. What started as a coastal Maine boundary dispute has now mushroomed into a federal case alleging RICO conspiracies and civil rights violations. See Brown v. Ferrara, 2:10-cv-00523-GZS, 2011 WL 1637917 (D. Me. Apr. 28, 2011)(the "Camden Defendants"); Brown v. Ferrara, 2:10-cv-00523-GZS, 2011 WL 1637925 (D. Me. Apr. 28, 2011) (Baiungo); Brown v. Ferrara, 2:10-cv-00523-GZS, 2011 WL 1637928 (D. Me. Aug. 28, 2011) (Ronson,

Gale, the "Rockport Defendants," and Richard & Cranston); see also Brown v. Town of Camden, 2:10-cv-00063-GZS, 2010 WL 1371401 (D. Me. Apr. 6, 2010). I cite the prior dispositions and need not belabor the details as this recommended decision is a companion to those prior recommended dispositions and the first Brown case against the Town of Camden and the state defendants.

Coffin Engineering, the current movant, is an engineering firm that (according to Brown) Ferrara employed to "run stakes down the line." (Compl. ¶ 107.) Brown also suspects that Coffin Engineering illegally shifted lot lines at the behest of the Laite family, additional defendants and original developers of the subdivision. (Id. ¶ 147.) Claiming that its involvement in the boundary dispute was done solely at Brown's behest and was limited to work done by James Dorsky, a professional land surveyor working for the firm, Coffin Engineering has moved for summary judgment. Based on the summary judgment record evidence, I recommend that the court grant Coffin Engineering's motion for summary judgment on the federal claims and dismiss without prejudice the state law claims against this defendant.

*Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trialworthy issue exists." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citing National Amusement Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)). "As to issues on which the summary judgment target bears the ultimate burden of proof," Brown "cannot rely on an absence of competent evidence, but must affirmatively point to specific facts

that demonstrate the existence of an authentic dispute." Id. (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be 'material' and the dispute over it must be 'genuine.' In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Id. (citing United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992)). "By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.....'" Id. (quoting One Parcel, 960 F2d at 204). "When all is said and done," I must "'view the entire record in the light most hospitable'" to Brown "'indulging all reasonable inferences in [his] favor.'" Id. (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). And a very key part of this review relating to Brown's summary judgment pleadings is that, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

*Facts*

The following factual statement is drawn from the parties' statements of material facts construed in accordance with District of Maine Local Rule 56. The relevant documents with regards to establishing the summary judgment facts are the Defendant's Statement of Material Facts (Doc. No. 75), Brown's response to Coffin Engineering's[1] pleading (Doc. No. 85), and the reply statement of facts (Doc. No. 102)[2].

---

[1] This defendant refers to itself as Coffin Engineering & Surveying, Inc. and E.S. Coffin Engineering & Surveying, Inc. For the purpose of addressing this summary judgment record there is no need to belabor the party name so in most instances I have limited the reference to Coffin Engineering.

[2] Coffin Engineering makes many very valid observations about evidentiary weakness and objections as they relate to Brown's responsive statement of facts. I do not think it is necessary to fully address these contretemps in this recommended decision because, even crediting all of Brown's responsive paragraphs, Brown has still not created a triable issue as to any of his claims against this defendant.

3

Craig Brown is a resident of 36 Stonehurst Drive, Camden, Maine. Michael Ferrara lives on the abutting lot at 42 Stonehurst Drive. Brown alleges that the defendants in this case conspired to violate his civil rights and use the color of state law to allow Ferrara to harass him at will and without fear of consequence, and to take possession of part of his property by illegally shifting the boundary lines. In his view Coffin Engineering should be held to account for fraud, conspiracy, professional malpractice, and the intentional infliction of emotional distress, and should be liable for punitive damages for illegally shifting the boundary markers of the Stonehurst Subdivision in order to shift the lot line between Brown's lot and Ferrara's lot at least four feet closer to Brown's house and bring Ferrara's house into compliance with the 25-foot setback requirement.

To assist the reader in following the facts presented, I note that in addition to Coffin Engineering there were three other surveyors involved in boundary dispute: Richard Cranston and Donald Richards of Cranston & Richards, Nathan Beale of FE Beale Surveying, and Gusta Ronson of Good Deeds Surveying.

The Stonehurst Subdivision land had been owned by Parker Laite Senior since 1978 and was developed by Laite Senior in the late 1980s. Cranston & Richards is the surveying company that set up the Stonehurst Subdivision in 1987. The lots of the Stonehurst Subdivision were clearly marked with post-and-rail markers located in the front and rear corners and the center of the side of each lot when the subdivision was created.

Brown purchased his lot at 36 Stonehurst Drive in January 1998. In the spring of 1998, shortly after purchasing the lot, Brown marked and/or measured their property lines by running strings between the post-and-rail sections on either side of his lot. Brown claims that in September 2001 the Town of Camden's zoning officer, Jeff Nims, determined that Michael

Ferrara's residence violated the 25-foot subdivision setback covenant with respect to the common property line between the Ferrara and Brown residences. Brown maintains that Nims gave Brown unqualified legal advice to sue Ferrara towards forcing Ferrara to cut off part of this house and made unqualified statements to the effect that the Ferrara house is too large for the lot and would still violate the covenants if centered on the lot. Brown asserts that at this juncture he decided against legal action based on Nims's advice because "it wasn't a nice thing to do."

Brown alleges that in 2002 he noticed evidence of surveying activity on his property, including trees being cut along his boundary line, red surveying streamer pieces tied to vegetation, and the movement of the surveying pins on the front of his lot and at the notice pin location and rear locations. He also alleges that there were additional pins located in the stone wall of Brown's lot, which had not been there before and that the new pins were placed by Cranston & Richards.

In 2003 Brown contacted Coffin Engineering and asked them to determine if the new pin locations were in the right place.[3] James Dorsky, a licensed professional surveyor in Maine and at that time an employee of Coffin Engineering, provided professional surveying services to Brown concerning the location of the common boundary line between the properties owned by Brown and Ferrara. Dorsky determined that the location of the boundary line between the two properties was accurate. After surveying both properties, Coffin Engineering determined that the pins were in the correct location and that "the lots checked out." According to Coffin Engineering it did not bill Brown for the professional surveying services it provided to Brown. (Def.'s SMF ¶¶ 15-18.)

Extracting the redundancies of agreed on facts, Brown offers the following facts to controvert these statements. He maintains that the plain language of the Vial-to-Laite deed states

---

[3] (SMF ¶¶ 1-14.) Brown has not disputed any of these facts.

5

that the stone walls that abut the property conveyed to Laite and the land underneath them is the property of the abutting landowners Rokes and Nash. (Pl.'s SMF ¶ 3; Ex. 1.) Brown's deed states that the rear boundary of his lot "runs along the stone wall." (Pl.'s SMF ¶ 4; Ex. 2.) Under Richard Cranston's interpretation of Maine road and easement determinations, the interpretation for a boundary to 'follow, go along or by' a physical monument such as a way is "that the extent of the Boundary line is to the edge of the monument." (Pl.'s SMF ¶ 5; Ex. 3.) It is Brown's contention that the true position of his rear boundary line is the edge of the monument. (Pl.'s SMF ¶ 6.) In 2001 Jeff Nims stated that (Geographic Information System (GIS) Survey information was "accurate to within a couple of feet." (Id. ¶ 7; Ex. 4.) In a telephone conversation with someone at Coffin Engineering prior to the Dorsky surveying work, Brown was told that the GIS surveys were only accurate to plus/minus five feet. (Pl.'s SMF ¶ 8; Brown Aff. at 2.) Brown maintains that the person who conveyed this information made false statements concerning the inaccuracy of GIS Survey data and this information was in conflict with what Nims told Brown. (Pl.'s SMF ¶ 9.) He further explicates, at the time of Coffin Engineering work the rear lot of Brown's lot was marked as the centerline to the rear edge of the stone walls that run along the back of Brown's lot, i.e., the location of the lines did not agree with Brown's deed description. (Pl.'s SMF ¶ 11; Brown Aff. at 4.) Dorsky did not use any transit of surveying instrument to determine the angular bearings of the lot lines when he surveyed Brown's property, did not bring a copy of Brown's deed with him, and had no way to determine if the boundary pin locations were accurate. (Pl.'s SMF ¶ 12; Brown Aff. at 5.) Dorsky's statements to Brown that the "lot checked out" were false and were not based on measurements that he could have made during this visit. (Pl.'s SMF ¶ 13; Brown Aff. ¶ at 5.) Brown indicates that he received a bill for $45 for Dorsky's surveying work but did not pay it

because he believes that Dorsky and Coffin Engineering made false statements to him concerning the GIS data and the survey work. (Pl.'s SMF ¶ 14; Brown Aff. at 8.) Brown maintains that the pin locations at the rear of Ferrara's lot and his lot were unchanged from their locations when Dorsky took linear measurements from where Brown took linear measurements. Brown insists that, per his measurements, the common lot line between his lot and the Ferrara lot is more than two feet too short and that the Beal survey shows over one degree of difference apropos Brown's deed description. (Pl.'s SMF ¶¶ 15, 16; Exs. 5 & 6.) In the "Principles and Procedures for Locating Boundary Lines" Richard Cranston wrote that surveyors have been able to measure within one minute of angular bearing since the introduction of the vernier transit in the 1800s. (Pl.'s SMF ¶ 17; Ex. 7.)

Brown alleges that he was told in 2002 by Coffin Engineering that Michael Ferrara was one of their clients. He has testified under oath that prior to the erection of the fence that he received a letter from Ferrara's attorney in the Boston area that stated that Ferrara's surveyor would stake the lot line prior to the construction. In May 2003 an attorney representing Ferrara informed Brown by letter that Ferrara would be erecting a fence one foot inside the common lot line. This letter stated that "some ties which the Plaintiff had laid along the lot line on the Plaintiff's property would have to be moved when the fence was erected." After receiving this May 2003 letter Brown walked the lot line between the properties and reviewed the staked locations which appeared to be on Brown's property.

Brown alleges that Ferrara engaged Coffin Engineering to run stakes down the common boundary line "which appeared to be inside the original post and rail markers and on the Plaintiff's property." The records of Coffin Engineering & Surveying, Inc. and E.S. Coffin Engineering & Surveying, Inc. reveal that these entities never provided any surveying services to

Ferrara of 42 Stonehurst Drive for the time period relevant to Brown's claims. Ferrara was not a client of Coffin Engineering and it never provided surveying services with respect to the lot and residence at 42 Stonehurst Drive other than as it related to the services provided Brown in 2003. (Def.'s SMF ¶¶ 19-28.) It is Brown's assertion that Coffin Engineering had surveyed the Ferrara lot (prior to the Dorsky survey at Brown's behest) but his only record evidence for this proposition is his own affidavit paragraph that articulates his supposition that even if Ferrara was not the defendant's client, Laite Senior surely was. (Pl.'s SMF ¶ 19; Brown Aff. ¶ 9, Doc. No. 84-1, Page ID No. 859.)

In sum, Coffin Engineering insists that it never moved the monuments, posts, pins, markers, or other indicators of the boundary line between the properties of Brown and Ferrara. (Def.'s SMF ¶ 29; Coffin Aff. ¶¶ 11-13.) It never "staked" the boundary line between the Brown and Ferrara properties. (Def.'s SMF ¶ 30; Coffin Aff. ¶¶ 11-13.) It never shifted the boundary lines between the properties of Brown and Ferrara, either alone or along with the other defendants in this case. (Def.'s SMF ¶ 31.)

For his part, Brown insists that Dorsky and the Augusta office of Coffin Engineering made false statements to Brown, participating in a conspiracy to defraud him. (Pl.'s SMF ¶ 18.) Brown alleges that he knew that the boundary markers for the common boundary had been moved in 2003 and suspected that the pins had been moved to bring the Ferrara residence into compliance with the subdivision's 25-foot set-back requirement.

After receiving the letter in 2003 Brown retained the surveying company of Good Deeds to do a simple pin check on the lot to see if the new pins were marking his property and see if the fence was on his property. (Def.'s SMF ¶ 32.) Brown alleges that a survey conducted by Good Deeds indicated that the distance between Ferrara's residence and the fence was 25 feet, which

conflicted with Camden zoning officer Nims's report which stated that the residence was 21 feet, plus or minus two feet, to the boundary line. As a result of the surveying work conducted by Good Deeds, Brown believed that the fence was two to six feet on his property and that Ferrara was trying to take adverse possession of part of his lot.

Brown decided not to take any immediate legal action against Ferrara regarding the fence in 2003 "[k]nowing that the Ferrara fence was on his land, and that it had to be there for over (20) years under Maine Law for Ferrara to claim the Land under Adverse Possession." Brown believes that the "Laites, Coffin Engineering and Cranston and Richards, the surveyors who set up the subdivision, illegally shifted the lot lines in order to bring the Ferrara residence into compliance with the covenants sometime between 2001-2002." He insists the common lot line was moved five to six feet closer to Brown's property. He alleges that he has knowledge that the boundary markers were shifted sometime between 2001 and 2002 because of his wife's and his own personal knowledge of the location of the markers when they closed on the property in 1998.

### *Prior Litigation*

In 2009 Ferrara, trustee of the Ferrara Maine Realty Trust, filed a complaint against Brown in Maine Superior Court, alleging that he had crossed over the boundary line between the neighbors' properties and destroyed a portion of Ferrara's fence. Count II of this complaint asked the court to establish the location of the parties' boundary lines. Brown filed a cross-claim against the Ferrara Maine Realty Trust alleging that Ferrara had trespassed onto his property by building the fence.

On November 18, 2009, the Maine Superior Court granted in part the Ferrara Maine Realty Trust's motion for summary judgment concluding:

9

> This resulting record establishes that the parties own abutting parcels of land; that the common boundary line is marked and defined by the existing monuments and surveying pins that were placed in the ground as part of the original subdivision development; that these monuments and pins are clearly visible; that parties' common boundary line is as shown in the survey prepared by Nathaniel Beal; that the fence erected by [Ferrara] is located on [Ferrara's] property; that the defendant damaged, destroyed or threw down the fence; that the cost to repair the fence was $4,038.19; and that the plaintiff incurred surveying costs of $2,510. These facts are deemed to be established and shall not be subject to challenge in this proceeding.

The Superior Court reiterated this in its Decision and Judgment dated November 8, 2010, after a hearing on the parties' remaining claims.

On February 12, 2010, Brown filed a complaint against the Town of Camden, Geoff Rushlau, and Lindsay Jones in the United States District Court, District of Maine. (Civil No. 2:10-cv-00063-GZS.) Brown named the following surveyors as "Related Persons": (1) Richard Cranston and Donald Richards of Cranston & Richards; (2) Nathan Beale of FE Beale Surveying; and (3) Gusta Ronson of Good Deeds Surveying. He alleged that Cranston & Richards, FE Beale Surveying, and Good Deeds Surveying were involved in a conspiracy to illegally shift the survey markers and lot lines in the Stonehurst Subdivision to cut down the size of Brown's lot. Brown asserted that "the Surveying Pins were illegally moved in the Stonehurst Subdivision by Cranston & Richards." In that litigation Brown alleged:

> The Nims report … detailing the location of the Ferrara residence relative to the lot line identified that Parker Laite Senior sold Stonehurst lots with Protective Covenants, but did not uphold the Covenants, and even helped build houses which clearly violated the 25 foot Set Back requirements. The house also was not built to the building permit, which showed a 40 foot set back.
> After the report was issued, Parker Laite had Cranston & Richards, the Surveyors who set up the subdivision, illegally shifted the lot lines around in the subdivision in order to bring the Ferrara residence into compliance with the covenants. The rear boundaries of the Ferrara (Lot 5) and Brown (Lot 4) were shifted from three to four feet inside the stone walls to the back to rear edge of the stone walls; which moved the common lot line five to six feet closer to Brown.[4]

---

4     (See Compl. ¶¶ 38, 39, 40, Doc. No. 1)

10

That complaint makes no mention of Coffin Engineering & Surveying, Inc. In a decision dated April 6, 2010, I recommended dismissing the complaint with prejudice. On May 10, 2010, United States District Court Judge George Singal issued an order adopting that recommendation. See Brown v. Town of Camden, 2:10-cv-00063-GZS, 2010 WL 1371401 (D. Me. Apr. 6, 2010).

## Discussion

The defendant is absolutely correct that Brown cannot bring a criminal complaint against it. See Keenan v. McGrath, 328 F.2d 610 (1st Cir.1964); accord Cok v. Consentino, 876 F.2d 1, 2 (1st Cir.1989). Furthermore, there is nowhere near sufficient record evidence to create a trial worthy issue as far as implicating Coffin Engineering in a RICO civil conspiracy. See Brown 2011 WL 1637928 at 9 (Ronson, Gale, the "Rockport Defendants," and Richard & Cranston).

As for Brown's attempts to hold the defendant liable under 42 U.S.C. § 1983, he has provided no basis in this record for concluding that Laite Senior was a state actor in 1987 when the original survey was done let alone that he was acting in this capacity in the context of subdividing the property. See American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). In addition, Brown falls well far of the mark of creating a genuine dispute that there was a sufficient factual predicate for ascribing a 42 U.S.C. § 1985 conspiracy between Coffin Engineering and Laite Senior to hold the former accountable under a theory of 42 U.S.C. § 1983 state action. See cf. Pena-Borrero v. Estremeda, 365 F.3d 7, 11 (1st Cir. 2004) (noting that "allegations in the complaint directed to conspiracy [that] are wholly conclusory and inadequate, under any pleading standard" justified dismissing conspiracy claims vis-à-vis Fourth and Fourteenth Amendment counts in a 42 U.S.C. § 1983 action); Tierney v. Vahle, 304 F.3d 734, 739 -40 (7th Cir. 2002) (similar conclusion also on motion to dismiss). There is also the additional barrier for Brown with respect to his federal civil rights claims that all of the alleged

civil rights violation conduct occurred well outside the six-year statute of limitation for these § 1983 and § 1985 claims. See Brown, 2011 WL 1637917 at 4 (the "Camden defendants").

Brown's allegations of a state law claim of professional misconduct/negligence on the part of Coffin Engineering does not require additional attention given my previous discussion in an earlier dispositive motion vis-à-vis similarly situated defendants and Brown's theory of his case. See Brown, 2011 WL 1637928 at 10-11 (Ronson, Gale, the "Rockport Defendants," and Richard & Cranston). There, I recommended dismissal without prejudice of the state law claims. As with those allegations, in this case in order to prove up a case of professional negligence against this surveying firm, the matrix of operative facts would differ substantially from the proof in a federal civil rights cases, including the necessity for expert witnesses and belabored legal analysis of issues unrelated to claims of civil rights violations, such as the state law statute of limitations regarding professional land surveyor negligence.

As if all the merit bars were not enough, there is also a very good case to be made that Brown is precluded from resuscitating his claims related to this boundary dispute given his prior litigation in the state courts, even though Coffin Engineering was not a party to the prior litigation. See Brown, 2011 WL 1637925 at 3, 6-7 (Baiungo motion). The defensive use of collateral estoppel would appear to bar re-litigation of issues surrounding the location of the common boundary.

## CONCLUSION

For the reasons stated above, I recommend that the Court grant Coffin Engineering's motion for summary judgment on his federal claims and dismiss without prejudice his state law claims as against this defendant.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 7, 2011