UNITED STATES DISTRICT COURT
DISTRICT OF MAINE


CRAIG A. BROWN,                             )
                                            )
Plaintiff                                   )
                                            )
v.                                          )   2:10-cv-00523-GZS
                                            )
MICHAEL FERRARA, et al.,                    )
                                            )
Defendants                                  )


**RECOMMENDED DECISION ON ERIC MORSE'S MOTION
FOR SUMMARY JUDGMENT (Doc. No. 108)[1]**


Attorney Eric Morse is one defendant in Craig Brown's multi-defendant federal action

and Morse has filed a motion for summary judgment that has been referred to me for a

recommended decision.[2]  Morse's current dispositive motion is premised entirely on a statute of

limitations argument.  He insists that his last contact with Brown was in October 2004 in a case

brought against Brown and other neighbors concerning boat slips and restrictive covenants.  (See

Morse Aff. ¶¶ 10-14.)  Although this last contact date is not crystal clear on the record before

---

[1]     After this motion was filed, Brown filed a motion to amend his complaint, accompanied by multiple
exhibits.  (See Doc. Nos. 131, 132.)  I denied that motion on June 28, 2011, and cautioned Brown that he could face
sanctions if he reneged on his obligation to submit his entire pleading in one submission without including
redundant and unnecessary documentation.  (Doc. No. 134.)  On June 30, 2011, Brown submitted a certification that
he would comply with this court's electronic filing requirements.  (Doc. No. 137.)  Brown's clear intent as expressed
in the proposed amended complaint was to broaden the reach of his conspiracy theory to embrace unrelated post-
2004 events and additional defendants, in addition to reviving claims against other defendants already dismissed
from this already unwieldy action.  In this recommendation I have held Brown to the allegations as expressed in his
original complaint as Morse's motion was obviously directed at those allegations.

[2]     What started as a coastal Maine boundary dispute has now mushroomed into a federal case alleging RICO
conspiracies and civil rights violations.  See Brown v. Ferrara, 2:10-cv-0053-GZS, 2011 WL 2270177 (D. Me. June
7, 2011) (recommended decision)(Coffin Engineering); Brown v. Ferrara, 2:10-cv-00523-GZS, 2011 WL 1637917
(D. Me. Apr. 28, 2011) (recommended decision) affirmed 2011 WL 2259639 (D.Me.) (the "Camden Defendants");
Brown v. Ferrara, 2:10-cv-00523-GZS, 2011 WL 1637925 (D. Me. Apr. 28, 2011) (recommended decision)
affirmed 2011 WL 2222002 (D.Me. June 7, 2011) (Baiungo);  Brown v. Ferrara, 2:10-cv-00523-GZS, 2011 WL
1637928 (D. Me. Apr. 28, 2011) (recommended decision) affirmed 2011 WL 2222000 (D. Me. June 7,
2011)(Ronson, Gale, the "Rockport Defendants," and Richard & Cranston); see also Brown v. Town of Camden,
2:10-cv-00063-GZS, 2010 WL 1371401 (D. Me. Apr. 6, 2010) (recommended decision) affirmed 2010 WL
1881177 (D.Me. May 10, 2010).  This recommended decision is a companion to those prior recommended
dispositions and the first Brown case against the Town of Camden and the state defendants.  Brown has filed
interlocutory appeals of three of the earlier dispositive determinations in this case.  (See Doc. Nos. 140, 141, 142.)

me, I now recommend that the Court grant his motion for summary judgment on statute of limitations grounds as to all the allegations that pertain to Morse's representation of Brown through December 2004. With respect to Brown's efforts to raise new factual disputes supposedly entwining Morse in post-December 2004 conduct relating to an 'ambush' of Brown by neighbors and another matrix of fact relating to lottery tickets, I recommend that the Court ignore these claims because, unless one is inclined to embrace a theory of a very wide and very persistent conspiracy against Brown which includes (or was spearheaded by) Morse, there is no basis to allow these claims to go forward against Morse in an amended complaint or in conjunction with the current complaint because the disputed incidental contact between Morse and Brown post December 2004, as alleged by Brown, does not create a material dispute about any viable legal cause of action.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trialworthy issue exists." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citing National Amusement Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)). "As to issues on which the summary judgment target bears the ultimate burden of proof," Brown "cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Id. (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be 'material' and the dispute over it must be 'genuine.' In this

regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Id. (citing United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992)). "By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.....'" Id. (quoting One Parcel, 960 F2d at 204). "When all is said and done," I must "'view the entire record in the light most hospitable'" to Brown "'indulging all reasonable inferences in [his] favor.'" Id. (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). And a very key part of this review relating to Brown's summary judgment pleadings is that, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

### *Facts*

Morse is an attorney at law (SMF ¶ 1; Morse Aff. ¶ 2) who has been practicing in Maine since 1994 (SMF ¶ 2; Morse Aff. ¶ 3).[3] According to Morse, he represented Craig Brown from January 2003 until October 2004 in connection with three actions out of the Knox County district and superior courts. (SMF ¶ 4; Morse Aff. ¶ 5.) Morse kept files at Strout & Payson, P.A. on each of these matters that document his dates of representation. (SMF ¶ 5; Morse Aff. ¶ 6.)

Morse first represented Brown in connection with State of Maine v. Craig Brown, ROCDC-CR-2003-1 14, from January 8, 2003, until March 21, 2003. (SMF ¶ 6; Morse Aff. ¶ 7.) A review of Morse's file in connection with ROCDC-CR-2003-1 14 revealed copies of the

---

[3]        Morse has been a shareholder at Strout & Payson, P.A. since January 2000. (SMF ¶ 3; Morse Aff. ¶ 4.)

dismissal form for the assault charge and a new disorderly conduct information from March 21, 2003. (SMF ¶ 7; Morse Aff. ¶ 8.)[4]

Morse next represented Brown in connection with <u>Michael A. Ferrara v. Craig Brown</u>, ROCDC-PA-2002-341, from January 14, 2003, until January 15, 2003. (SMF ¶ 8; Morse Aff. ¶ 9.)

Morse last represented Brown in connection with <u>Christine Anderson, et. al. v. Craig Brown, et. al.</u>, ROCSC-CV-2003-042. He contends that this representation lasted from October 23, 2003, until, according to Morse, October 6, 2004. (SMF ¶ 9; Morse Aff. ¶ 10.) This final matter was an action that was brought by Brown's neighbors to enforce restrictive covenants relating to boat slips. (SMF ¶ 10; Morse Aff. ¶ 11.)

Morse insists he has had no involvement whatsoever with Brown since October 2004. (SMF ¶ 11; Morse Aff. ¶ 12.) Since October 2004, Morse has not discussed Brown with any of the other co-defendants, or anyone else, except Joseph Baiungo, Esq. in connection with Baiungo's representation of Morse in this instant case. (SMF ¶ 12; Morse Aff. ¶ 13.)

Brown effectively brought the same complaint as this in Knox County Superior Court at ROCSC-CV-2008-01 8, which also named Morse as a defendant. (SMF ¶ 13; Morse Aff. ¶ 14.) The complaint at ROCSC-CV-2008-01 8 was dismissed on October 6, 2004 (*sic*). (SMF ¶ 14; Morse Aff. ¶ 15.)[5] That complaint, on the ninth page, alleged that Morse represented Brown

---

[4]     In his affidavit Brown states that he had a verbal confrontation with Ferrara on December 26, 2002, as a consequence of the removal of a tree and a post-and-rail lot line marker that divided their properties. (Brown Aff. ¶ 10.) During this verbal exchange Brown says he "misjudged his movement down the snow-covered driveway and ran into Ferrara." (<u>Id.</u> ¶ 11.) He states that he "used his open hands to gently deflect and move Ferrara away from him during the accidental meeting, and Ferrara tried to use his arms to push off" Brown. (<u>Id.</u> ¶ 12.) This incident seems to be part of the prelude to the erection of the fence by Ferrara.
[5]     Morse's summary judgment motion was not put together with the greatest of care. He uses this meaningless date in his affidavit, but the docket sheet submitted in support of the motion shows that the state case was closed on April 28, 2008, when it was dismissed without prejudice. (Doc. No. 108-6.) In a case such as this one, requiring literally hundreds of hours of court process, it is not too much to expect that counsel for the defendants would take some care in drafting motions and related pleadings.

from 2001 through 2004.  (SMF ¶ 15; Morse Aff. ¶ 16.)  Morse stresses that this complaint

allegation is correct, as Morse insists that he has had no contact with Brown since October 2004.

(SMF ¶ 16; Morse Aff. ¶ 17.)

In response to these statements of fact, Brown offers the following.  Brown states that he

retained Morse in 2001 and that Morse visited his property to review the Ferrara protective

covenant 'violation.'  (SAMF ¶ 1; Brown Aff. ¶ 1, Doc. No. 121.)  It is Brown's conclusory

assertion - relying on his own affidavit - that Morse prevented Brown and his wife from filing

accurate police reports until October 2005.  (SAMF ¶ 2; Brown Aff. ¶¶ 56, 57.) [6]  Brown states

that Morse received a letter from Ferrara's attorney in May 2003 that informed Brown that

Ferrara would be erecting a fence one foot inside the common lot line between the Brown and

Ferrara lots.  (SAMF ¶ 3; Brown Aff. ¶17.)  Morse recommended that Brown take no action to

prevent Ferrara from putting up the fence prior to its erection and also recommended that Gusta

Ronson perform a simple pin check after the fence was constructed.  (SAMF ¶ 4; Brown Aff.

18.)  Brown feels that Morse did not give him adequate legal advice to protect his property from

Ferrara's 'adverse possession.'  (SAMF ¶ 5; Brown Aff. ¶ 19.)  Brown surmises that Morse

conspired with Gusta Ronson to fabricate a survey plan that could be used as probable cause to

arrest and prosecute Brown if he took action to defend his property rights by removing the fence

while leaving the bearing and distances off of the survey plan so that Brown could not use the

plan to argue that the lot lines of the subdivision had been illegally moved.  (SAMF ¶ 6; Brown

Aff. ¶ 20-32.)

---

[6]      Brown maintains in a very conclusory fashion that in 2001 Morse began conspiring with Camden Police to
violate his and his wife's civil rights.  (SAMF ¶ 2.)  Brown's wife is not a plaintiff in this action.  The conclusory
assertion of a civil rights conspiracy as against Brown himself is insufficient to create –in and of itself – a triable
claim.

Brown further indicates that Morse represented Brown in "a Boat Trailer Lawsuit from August of 2003 until February 4, 2005."  (SAMF ¶ 7; Brown Aff. 34; Doc. No. 108-5.)

Brown insists that Morse conspired with Robert Buell, Michael Ferrara, and Curt Andrick to induce Brown to commit assault regarding 'the Ferrara and Buell Ambush' in July 2005. (SAMF ¶ 8; Brown Aff. ¶¶ 41, 71.)  Brown maintains that he consulted Morse regarding this 'ambush' by his neighbors in 2005.  (SAMF ¶ 9; Brown Aff. ¶¶ 48-50; Ex. 39.)[7]  He believes that Morse conspired with Officers Andrick and Roberts to file <u>inaccurate</u> police reports that stated that Morse represented Brown until October 2005.  (SAMF ¶ 10; Brown Aff. ¶¶ 56, 57.)

These two affidavit statements read:

> In February of 2006, the Plaintiff traded emails with Phil Roberts regarding the Camden Police attempting to document that the Plaintiff was represented by Morse.
> The Plaintiff obtained copies of all of the Police Reports which he had filed with the Camden Police, and Morse's representation of the Plaintiff is documented in at least (3) Police Reports, filed by Curt Andrick and Phil Roberts starting in April, July, and October of 2005.

(Brown Aff. ¶¶ 56, 57.)  The exhibits relied on in these two affidavit statements have slight relevance to the sustainability of Brown's federal civil rights claim.  Exhibit 115 to the Brown Affidavit merely states that the officer, Curt Andrick, responding to Brown's complaint about harassment, advised Brown to continue to work with his attorney, Morse, with regards to the recent alleged harassment by neighbors.  (Doc. No. 121-21 at 2.)  Exhibit 111A indicates that, after a police response to a dispute between Brown and a neighbor about the parking of Brown's vehicle in relation to the Buell property, Officer Andrick noted that he attempted to contact

---

[7]    Brown's record evidence for this assertion is that he did go and see Morse on July 5, 2005, and that Morse told Brown that, unless the law had been broken, Brown could not get an order for protection.  (Brown Aff. ¶¶ 48, 49.)  Brown regretted this visit and left the office thinking that Andrick had set it up so that Morse could bill Brown for the visit.  (Id. ¶ 50.)  He also asserts that Morse's real intent for wanting to see Brown was to "read" Brown "in order to determine if the Plaintiff suspected that Morse had helped defraud the Plaintiff of a large lottery prize, a.k.a. the McDuck's Clerk."  (Id.)  Brown states that he was surprised that he did not receive a bill from Morse with regards to this consultation.  (Id. ¶ 51.)

Attorney Morse in the aftermath but he received a recorded message that Morse was on vacation. (Doc. No. 121-19 at 4.) Exhibit 116 is a police report in which Roberts indicates that Brown told him that the day before Ferrara 'stared him down' while Brown was sealing his driveway, that a couple hours later Brown heard shutter activity and concluded that Ferrara was taking pictures of him and then Brown heard Buell's shutters closing. The next day, the day of the report, Brown thought Buell stared him down when Brown was doing a three point turn in front of his house. There is more about Ferrara showing up where Brown was in town and Brown's belief that these encounters were achieved because of listening devices in Brown's house. And the narrative ends by indicating that Brown told Roberts that Morse was his attorney and that he might contact him regarding this harassment. (Doc. No. 121-22 at 2.) This record evidence does not support a claim within the bounds of this statute of limitations inquiry beyond the fact that Morse previously represented Brown and that the reporting officers suggested that Brown should contact Morse if he wanted to proceed further with his complaints against his neighbors. There is no record evidence that Morse actively engaged with the police regarding these three responses by police to the neighborhood complaints. It also must be highlighted that Brown himself describes the three police reports as <u>falsely</u> indicating that he was represented by Morse during these occurrences. Brown now does a switchback with regards to his assertions of how involved Morse was in his representation post December 2004.

Finally, in two rather extraordinary statements of fact Brown attempts to tag Morse as being the "mastermind of a 10 year Conspiracy that utilized the State Actors to violate the Plaintiff's property and illegally make a change to a Maine Subdivision," (SAMF ¶ 11; Brown Aff. ¶ 70) and describes Morse as attempting "to utilize the legal process for unlawful purpose

in an attempt to use the threat of Felony Convictions(s) to extort the Plaintiff's property rights from him in violation of the Hobbs Act" (SAMF ¶ 12; Brown Aff. ¶ 72).

**Recommended Disposition**

This dispositive motion and Brown's response retreads factual and legal grounds previously addressed vis-à-vis the prior dispositive motions already resolved by this court. In his motion for summary judgment Morse relies solely on a statute of limitations defense. (See Mot. Summ. J. at 3-4.) Morse relates that he "was served with the Complaint in this matter on January 3, 2011. (See docket entry #23) Because Defendant Morse's last involvement with Plaintiff was in October, 2004, more than 6 years has elapsed since any claim could have possible accrued and, accordingly, the Statute of Limitations precludes Plaintiff's actions." (Id. at 3.) See Brown, 2011 WL 2270177 (Coffin Engineering); Brown, 2011 WL 1637917 at 4 (the "Camden defendants").[8]

To determine "the applicable prescriptive period for a § 1983 claim, [I] look to the statute of limitations period for personal injury cases in the forum state." Cao v. Puerto Rico, 525 F.3d 112, 115 (1st Cir. 2008) (citing Ruiz-Sulsona v. Univ. of P.R., 334 F.3d 157, 159 (1st Cir.2003)). In Small v. Inhabitants of City of Belfast, the First Circuit concluded that "the Maine six-year statute of limitations, 14 M.R.S.A. § 752, is the appropriate one to be used for section 1983 cases in the state of Maine." 796 F.2d 544, 546 (1st Cir. 1986).

---

[8]     Brown filed his complaint in this court on December 20, 2010, meaning that any actionable conduct by Morse prior to December 20, 2004, is barred by the statute of limitations defense raised by Morse. In the reply memorandum Morse continues to rest on his statute of limitations defense, maintaining that he was not served with this complaint until January 3, 2011. (Reply Mem. at 3.) Not that it is determinative in this case, but the service date relating to a particular defendant is not the trigger-point for the running of the statute of limitations unless, perhaps, service is delayed more than the length of time allowed under the applicable rules of procedure. See Batchelor v. Martin, No. Civ. A. CV-00-191, 2002 WL 1065578 (April 22, 2002)(Gorman, J.)(recognizing six-year anniversary of injury as the latest date to timely file and allowing 90 days under Maine Rule of Civil Procedure 3 to accomplish service).

For his part, Brown references the docket for the 'boat slips' case which does suggest that

Morse was representing Brown in a matter which concluded on February 11, 2005, according to

the state court docket. The recurring bad blood between neighbors aside, this case was entirely

unrelated to the border dispute at the core of this complaint but concerned, instead, a restrictive

covenant dispute about the visibility of boats to the neighbors as to which Brown was a

defendant and the plaintiffs, the Andersons, are not any part of the alleged conspiracy against

Brown. (See Doc. No. 108-5; id. Page ID No. 1552.) Morse's representation of Brown in that

case formally ended with the dismissal of all claims against Brown with prejudice and without

costs on February 11, 2005. (Doc. No. 108-5.) Whatever factual dispute may arise as to Morse's

continuing representation of Brown after October 2004 as a result of those docket entries, the

conduct as evidenced by the docket entries certainly does not support any claim of an actionable

civil rights violation by Morse in connection with his post-December 2004 representation of

Brown.

Paragraph 21 of Brown's complaint represents that Ronson, of Good Deeds, was

recommended to Brown by Morse. (Compl. ¶ 21.) Brown also indicates his discontent with

Morse in 2001 regarding related legal advice to Brown to initiate legal proceedings (id. ¶ 97) and

that Brown decided to "overlook" this advice because he did not think it was a nice thing to do

(id.¶ 98). Paragraph 106 states that Morse used the criminal charges stemming from a December

26, 2002, incident to "manipulate and terrorize" Brown, suggesting that Brown could serve hard

time for his conduct. (Id. ¶¶ 104-106.) In May 2003, Brown alleges that he received the letter

from Ferrara's attorney regarding the fence installation and Morse advised Brown not to take any

preventative action and counseled that Brown have Good Deeds do a simple pin check. (Id. ¶¶

108, 109.) The other allegations against Morse are at the end of the eighty-five page complaint

concerning a conspiracy and do not link Morse to any post 2004 conduct. (See id. ¶¶ 189, 198, 199, 206, 210.) Paragraph 212 states that Brown did not discover the fraud until early 2009 and that Morse's and Ronson's actions kept Brown from filing an appeal against the criminal charges, thereby depriving Brown of his due process rights (id. ¶ 212) and that these two defendants' actions were a premeditated attack against a victim of crime (id. ¶ 213). Brown indicates that he filed an action against Morse and Parker Laite about fraudulently moving lot lines that was dismissed. (Id. ¶ 258.) Not a single one of these allegations reaches specific conduct by Morse beyond December 2004. His hobbled together attempts to introduce post-December 2004 conduct into the summary judgment record are unavailing. Likewise unavailing is Brown's argument that Morse somehow fraudulently concealed the fact that in 2003 Morse advised him to allow Ferrara to install the fence. Obviously Brown's discontent with Morse predated December 2004 and Brown well knew it long before December 2010.

In his affidavit Brown states that Morse represented Brown in 2003 with regards to a stolen lottery ticket allegedly pilfered by Christine Anderson, a Camden McDucks Market store clerk, in the fall of 2002. (Brown Aff. ¶ 36, Doc. No. 121.) The "stolen" lottery ticket imbroglio is an entirely new factual allegation and, to the best of my knowledge, had nothing to do with the original conspiracy involving Ferrara, the Laites, the Camden and Rockport police, other Maine attorneys, the surveyors, and shifting lot lines. To the extent that Brown now suggests that Morse had anything to do with the McDuck Lottery ticket situation this factual footing is not only not pled in the complaint but is beyond the bounds of common sense without some record substantiation by Brown connecting Morse to this alleged theft after December 2004. Brown's affidavit speculations do not amount to admissible evidence.

With regards to the boat trailer lawsuit -- assuming somehow Morse's representation on the behalf of Brown did carry over into February 2005 until the final docketing was accomplished -- there is simply no plausible connection between the Ferrara/Brown border dispute which is the crux of this suit and the boat slip action brought by the Andersons against several neighbors regarding the visibility of boats in this subdivision. The notion that Morse conspired with Buell, Ferrara, and Andrick in 2005 to induce Brown to commit an assault when he was confronted/ambushed by Ferrara and Buell is completely without any evidentiary support other than Brown's conclusory allegations and speculations. The factual dispute over whether or not Brown paid a visit to Morse's office in July of 2005 based upon the advice given him by the Camden police does not move this claim forward. Accepting Brown's version as true, he does not allege any actionable conduct by Morse based on that visit. According to Brown, Morse advised him he could not get an Order for Protection from Harassment "unless a law had been broken." (Brown Aff., Doc. No. 121, ¶ 49.) That allegation is not material to any civil rights violation by Morse, a private attorney.

I have addressed Brown's conspiracy theory in prior recommended decisions on motions to dismiss cited in Footnote 2 and the current pleadings do not necessitate dredging those waters in relation to Morse's liability for any conduct on some sort of collusive state action theory outside the six year statute of limitations applicable to the Count I federal claim. See American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Pena-Borrero v. Estremeda, 365 F.3d 7, 11 (1st Cir. 2004); Tierney v. Vahle, 304 F.3d 734, 739 -40 (7th Cir. 2002). Brown's complaint allegations, his defense of this summary judgment motion, and the summary judgment record, as it concerns Morse based on a theory of some sort of ongoing collusion with state

actors is simply not supported in the summary judgment record by anything other than Brown's own conclusory allegations.

## CONCLUSION

For the reasons stated above, I recommend that the Court grant Morse's motion for summary judgment on the statute of limitations defense as to Count I that relies on the allegations in the complaint involving Morse's interactions with Brown through December 2004. To the extent that Brown is attempting to cast a net wider than his complaint allegations vis-à-vis Morse, I recommend that the Court rebuff this strategy and definitively grant Morse judgment in this action.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

July 7, 2011