## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

CRAIG BROWN,                           )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )   Docket no. 2:10-cv-523-GZS
                                       )
MICHAEL FERRARA, et al.,               )
                                       )
                                       )
                    Defendants.        )


## ORDER ON MOTION FOR SUMMARY JUDGMENT


Before the Court is Defendant Michael Ferrara's Motion for Summary Judgment (ECF No. 281). For Reasons explained herein, the Court GRANTS Defendant Ferrara's Motion.


### I.    LEGAL STANDARD

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (citing Anderson, 477 U.S. at 248) (additional citation omitted).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004).

Once the moving party has made this preliminary showing, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 56(e). "Mere allegations, or conjecture unsupported in the record, are insufficient."  Barros-Villahermosa v. United States, 642 F.3d 56, 58 (1st Cir. 2011) (quoting Rivera-Marcano v. Normeat Royal Dane Quality A/S, 998 F.2d 34, 37 (1st Cir. 1993)); see also Wilson v. Moulison N. Corp., 639 F.3d 1, 6 (1st Cir. 2011) ("A properly supported summary judgment motion cannot be defeated by conclusory allegations, improbable inferences, periphrastic circumlocutions, or rank speculation.") (citations omitted). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (quoting In re Ralar Distribs., Inc., 4 F.3d 62, 67 (1st Cir. 1993)).

In this District, Local Rule 56 provides an explicit procedure for queuing up the factual record in connection with a motion for summary judgment.  *Pro se* plaintiffs are not as a rule excused from complying with District of Maine Local Rule 56.  See Ruiz Rivera v. Riley, 209 F.3d 24, 27–28 & n. 2 (1st Cir. 2000) (noting that the First Circuit has "held consistently that *pro se* status does not free a litigant in a civil case of the obligation to comply with" a district court's

procedural rules); see also Lacadie v. Milford, Civ. No. 07–101–BW, 2008 WL 1930410, at *6 n.8 (D. Me. May 1, 2008) ("Courts are not required or even expected to independently sift through the record in search of evidence that might salvage a *pro se* plaintiff[']s case.") (citation omitted). Nevertheless, in certain cases, the Court has approached summary judgment disputes involving a *pro se* party with some leniency. See, e.g., Clarke v. Blais, 473 F. Supp. 2d 124, 128-30 (D. Me. 2007); Demmons v. Tritch, 484 F. Supp. 2d 177, 183–84 (D. Me. 2007). In the context of this case, where the outcome remains the same regardless, the Court has accorded Plaintiff's *pro se* filing the appropriate latitude in the following recitation of undisputed material facts.

## II.   FACTUAL BACKGROUND

### A. Prior Litigation

Plaintiff Craig Brown and his neighbor, Defendant Michael Ferrara, own abutting lots in the Stonehurst Subdivision in Camden, Maine. For more than a decade, Brown and Ferrara have been involved in a boundary dispute concerning the extent of their respective lots. The dispute first boiled over on December 26, 2002, when Brown and Ferrara were involved in an altercation that resulted in Brown pleading guilty to disorderly conduct. Five months after the altercation, in May 2003, Ferrara erected a fence along the boundary line. Brown suspected that the fence was partially on his property, and he hired an attorney to advise him regarding the fence, but Brown was advised that the fence was located on Ferrara's property and Brown took no action at that time.

On September 15, 2008, Brown filed a Complaint for Protection from Harassment against Ferrara in the Knox County District Court. (See Brown v. Ferrara, Docket No. ROCDC-PA-08-

242 ("Brown v. Ferrara I").)  Brown's Complaint alleged a history of fraud, harassment, and abuse in Camden and Rockport, Maine by Ferrara and a variety of other individuals, including Brown's one-time attorney Eric Morse; Parker Laite, Sr., a former Camden City Councilman and the developer of the Stonehurst Subdivision; Parker Laite, Jr., a former Camden City Councilman; and the Camden Police Department.  Brown alleged that Ferrara and others were using electronic eavesdropping, private detectives, the Camden and Rockport police departments, and others to intimidate and threaten Brown and his wife.  Brown further alleged that GPS tracking devices had been placed in his vehicles and that this tracking extended to Brown's activities in Arizona, Texas, and Pennsylvania.[1]  Finally, Brown alleged that Ferrara and others had harassed him and his wife both in Maine and a variety of other states.  The Maine District Court held a hearing on the complaint and issued a ruling denying Brown's request.  The ruling also concluded that Brown failed to offer sufficient proof that Ferrara was electronically monitoring Brown, that Brown's testimony was not credible, and that Brown failed to prove harassment or abuse.

In February 2009, Brown began cutting down portions of the fence erected by Ferrara. Ferrara responded by filing a complaint against Brown seeking protection from harassment.  (See Ferrara v. Brown, Docket No. ROCDC-PA-2009-00047.)  On April 17, 2009, the Knox County District Court entered a final harassment order based on an agreement between Brown and Ferrara that prevented Brown from any direct or indirect contact with Ferrara and required that Brown allow Ferrara to resume work on the fence.  On May 11, 2009, Brown filed a motion to vacate the order claiming that Ferrara's attorney had added words to the order without Brown's knowledge or consent.  The Knox County District Court denied Brown's motion, noting that the

---

[1] Brown also alleged that Ferrara and others had fraudulently moved survey pins in an effort to defraud Brown of part of his property.  The Maine District Court excluded this allegation from its ruling because the allegations were not technically part of a harassment suit.

4

April 17, 2009 order had been presented in open court, both parties had signed the order, and Brown had said that the order was acceptable to him.

In addition, the Knox County District Attorney's Office charged Brown with criminal mischief for cutting down portions of the fence.  (See State v. Brown, Docket No. ROCSC-CR-2009-00083.)  A jury trial was held and Brown was found guilty.  As part of his sentence Brown was ordered to pay $1100 in restitution.  Brown attempted, unsuccessfully, to stop the criminal prosecution by filing a lawsuit in federal court against the Town of Camden, in which he alleged that Ferrara, the Town of Camden, prosecuting attorneys, other attorneys, and surveyors were involved in "repeated violations of [Brown's] Constitutional Rights, related to Land Fraud and Local Corruption over a nine year period in Camden, Maine."  (Recommended Decision at 1, Brown v. Camden, Docket No. 10-63-P-S (D. Me. Apr. 6, 2010) (ECF No. 21) (citing Plaintiff's Complaint ¶ 20).)  The case was dismissed with prejudice.

Ferrara attempted to permanently resolve the boundary dispute by filing suit in Maine Superior Court seeking a declaratory judgment concerning the location of the boundary line; damages for trespass; and recovery of attorney's fees, surveyor's fees, and punitive damages.  (See Michael Ferrara, Trustee v. Craig Brown, Docket No. ROCSC-RE-09-10 ("Brown v. Ferrara II").)  In response, Brown filed numerous counterclaims seeking "an adjudication of the parties' property rights" and asserting several other claims arising "from the difficult relationship between the parties" – including, invasion of privacy, malicious prosecution/abuse of process, civil perjury, and infliction of emotional distress.  (Order on Motion for Summary Judgment and Motion to Amend Counterclaim at 1, Nov. 18, 2009, Brown v. Ferrara II; Decision and Judgment at 1, Nov. 8, 2010, Brown v. Ferrara II.)  Brown alleged that Ferrara: filed false and untrue police reports against him; spied on him, eavesdropped on him, and harassed him; followed and stalked

him and his wife; maliciously initiated legal actions against him in 2002 and 2009; caused his attorney to give him false advice; acted in concert with the Camden and Rockport police departments in a scheme to seize part of his property by adverse possession; and initiated a "campaign to defraud [him] of his property rights." (Amendment to Counterclaim at 1-3, Aug. 21, 2009, <u>Brown v. Ferrara II</u>.)   At trial, Brown additionally contended that: all attorneys and surveyors in Maine had colluded to prevent him from obtaining legal counsel and an accurate survey; the Superior Court judge had issued a fraudulent summary judgment opinion ruling against him; the Stonehurst Subdivision developers had fraudulently sold lots in the subdivision; his surveying pins and lot lines were illegally shifted in order to move Ferrara's lot closer to his; Ferrara had wrongfully charged him with assault; Ferrara, Ferrara's attorney, Brown's attorney, and various surveyors were involved in a "scheme … to get Brown arrested and indicted on felony charges," which would "force [Brown] to give up [his] property rights;" he had been the victim of harassment by Ferrara, the Camden Police Department, and the Rockport Police Department; Ferrara, the Stonehurst Subdivision developer, and surveyors had attempted to shift his property boundary in order to decrease the size of his property. (Trial Tr. 19, 20, 41, 43, 56, 61, 62, 78, Mar. 16, 2010, <u>Brown v. Ferrara II</u>.)

On November 8, 2010 the Superior Court issued a ruling in favor of Ferrara, concluding that the fence erected by Ferrara was located on Ferrara's property; that Brown "damaged, destroyed or threw down the fence; and that the cost to repair the fence was $4038.19." (Decision and Judgment at 1-2, <u>Brown v. Ferrara II</u>.)   Regarding Brown's boundary dispute with Ferrara, the court stated:

> Brown contends that he has been defrauded by [his lawyers] and other attorneys and by the surveyors, acting at least partly in concert with one another.   And Brown believes that several persons have engaged in an elaborate effort to relocate a significant number of pins and other monuments on his lot and other

6

> lots in order to reduce the size of his lot and increase the distance between the house located on the trust's lot and their boundary, in order to allow conformity with the setback.

(Id.)  The Superior Court found that Brown had a genuine belief that the Ferrara trespassed on his property by erecting the fence, but that Brown's belief was incorrect.  Accordingly, the Superior Court ruled in favor of Ferrara on his and Brown's competing claim and counterclaim for trespass and on Ferrara's claim seeking to establish the location of the boundary line. Finally, the court ruled that Brown had failed to establish any of his remaining counterclaims. The superior court entered final judgment in <u>Brown v. Ferrara II</u> on December 16, 2010.

### B.  The Pending Litigation

A month after losing in Maine Superior Court, Brown filed an eighty-three page complaint in this Court naming approximately twenty-one defendants and asserting approximately fifty-nine claims, ranging from an alleged conspiracy to violate Brown's civil rights, to a variety of common law tort claims, to RICO violations.  On February 15, 2012, Ferrara filed his motion for summary judgment; a statement of material facts consisting of seventy paragraphs related to prior litigation between Ferrara and Brown (ECF No. 282); and nineteen exhibits also related to the prior litigation (<u>id.</u>).  On February 22, 2012, Brown filed a motion for summary judgment against all defendants remaining in the case (ECF No. 293); a statement of material facts consisting of 176 paragraphs (ECF No. 302); and approximately 205 exhibits (ECF Nos. 293-99, 305, 306).  Brown's summary judgment motion pressed the following claims against Ferrara:  fraud in the sale and development of the Stonehurst subdivision; illegal movement of lot lines; fabrication of evidence concerning surveys undertaken to determine the boundary between Brown and Ferrara; stalking and harassment by Ferrara and the police; false arrest; defamation of character; malicious prosecution; extortion,

fraud, and violation of Brown's civil rights by filing <u>Brown v. Ferrara II</u>; retaliation by unjust criminal conviction for the criminal prosecution of Brown after he cut down the fence; outrageous behavior; and punitive damages. Brown also filed an opposition to Ferrara's motion for summary judgment (ECF No. 314), which included a section opposing the majority of Ferrara's statements of material fact.[2]

## III. DISCUSSION

Ferrara contends that he is entitled to summary judgment because res judicata and collateral estoppel prevent Brown from re-litigating his claims.[3] Specifically, Ferrara contends that under the doctrine of claim preclusion all the claims Brown asserts against Ferrara in this Court are barred by the Maine Superior Court judgment in <u>Brown v. Ferrara II</u>. Additionally, Ferrara asserts that issue preclusion bars Brown's suit in this case because the facts at issue here were previously litigated in <u>Brown v. Ferrara I</u> and <u>Brown v. Ferrara II</u>. Brown responds by stating that res judicata and collateral estoppel do not apply because the decisions in <u>Brown v. Ferrara I</u> and <u>Brown v. Ferrara II</u> were obtained by fraud. The Court has already rejected this argument, <u>see</u> Order on Plaintiff's Motion to Set Aside or Vacate Judgment (ECF No. 380), and need not further discuss it here. Brown also asserts that his harassment claim cannot be

---

[2] Because the Court concludes that Brown's claims are precluded under the doctrine of claim preclusion, the Court does not discuss in detail whether Brown has met his burden of showing that there are no undisputed issues of material fact in this case that entitled him to judgment as a matter of law. The Court also believes that Brown has utterly failed to meet this standard, as his numerous and variegated submissions do not come close to establishing that there are no undisputed material facts underlying his various legal theories.

[3] Ferrara also asks the Court to disregard and strike Brown's Statement of Material Facts because they violate the Court's Order requiring that Brown identify in each statement of material fact which defendant must respond. <u>See</u> Report of Rule 56(h) Pre-Filing Conference at 3-4, Jan. 26, 2012 (ECF No. 277). Ferrara also alleges that Brown violates the Court's Order by (1) requiring Ferrara to respond to allegations against numerous other parties, allegations that do not offer any evidence that Ferrara took any action that would make him complicit with the alleged actions of other parties; and (2) making claims against non-parties, many of whom have been dismissed from the case. While the Court believes that Ferrara's request is not unfounded, the Court need not address Ferrara's request because the Court rules in favor of Ferrara on the basis of claim preclusion.

precluded because it is in part predicated upon facts occurring after Brown v. Ferrara II.  In addition, Brown presses his claims in a separate summary judgment motion in which he apparently contends that he is entitled to summary judgment because there is no genuine issue of material fact as to the numerous factual allegations he makes in support of his claims.

The doctrine of res judicata prevents the relitigation of matters already decided.  As the Maine Supreme Court has stated, the law is plain that [parties] cannot again come forward in the same legal mission against the same parties to secure a remedy … previously denied." Portland Water Dist. v. Town of Standish, 940 A.2d 1097, 1099 (Me. 2008).  Res judicata consists of two components – claim preclusion and issue preclusion.  See id.  In applying res judicata, federal courts "must give the same preclusive effect to issues already decided as would be given by the courts of the state in which the federal court sits." Cinelli v. Revere, 820 F.2d 474, 479 (1st Cir. 1987).

Under Maine law, claim preclusion bars relitigation if:  "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." Portland Water Dist., 940 A.2d at 1099.  To determine whether a claim is barred, Maine courts apply a transactional test, "examining the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong."  Id. at 1100 (citing Norton v. Town of Long Island, 883 A.2d 889, 895 (Me. 2005)).  Such a claim is precluded even if the second action "relies on a legal theory not advanced in the first case, or involves evidence different from the evidence relevant to the first case."  Id. (citing Norton, 883 A.2d at 895).  The first two

conditions are clearly satisfied in this case.  Brown and Ferrara were parties in <u>Brown v. Ferrara</u> <u>II</u> and are the parties here,[4] and the Maine Superior Court issued a final judgment in <u>Brown v.</u> <u>Ferrara II</u>.

Although Brown has asserted far more claims in this federal case (fifty-nine) than he asserted in <u>Brown v. Ferrara II</u> (five), Ferrara contends that this case presents the same claims that were presented and disposed of in <u>Brown v. Ferrara II</u>.  The Court agrees.  Despite the significant increase in the number of claims in this federal case, application of the transactional test makes clear that Brown relies on the same claims here that he did in <u>Brown v. Ferrara II</u>. Under the transactional test the measure of a claim is "the aggregate of connected operative facts that can be handled together conveniently for trial."  <u>Beegan v. Schmidt</u>, 451 A.2d 642, 645 (Me. 1982).  The operative facts alleged by Brown in both the federal and state cases include allegations that Ferrara:  erected the fence on Brown's property; filed untrue and false police reports; spied on Brown, which extended to Arizona, California, Texas, and Pennsylvania; lurked, eavesdropped, harassed, and stalked Brown; maliciously initiating legal actions against Brown; induced Brown's legal counsel to provide false and misleading legal advice to Brown; used the Camden and Rockport police departments to harass Brown and induce him to take action to defend his property; committed perjury, along with his attorney Joseph Baiunga, in <u>Brown v. Ferrara II</u>; and caused Brown severe emotional distress.[5]  Examining the "aggregate

---

[4] Ferrara points out that <u>Brown v. Ferrara II</u> was a lawsuit brought by a trust – consisting of Ferrara and his wife – against Brown.  Brown has not raised the fact that the trust was the plaintiff in <u>Brown v. Ferrara II</u> as an issue, and Brown litigated the state case as though Ferrara were the plaintiff rather than the trust.  This issue is immaterial, however, because preclusion bars the relitigation of claims if the same parties are involved in both actions, if there is privity between the parties in the two suits, or if the new party – here Ferrara – is closely related to a party – the trust in the state case – from the original action who was not named in the original suit.  <u>See</u> <u>Silva v. City of New Bedford</u>, 660 F.3d 76, 80 (1st Cir. 2011).

[5] In considering whether claim preclusion applies, the Court is not restricted to reviewing only the issues "actually litigated" in the earlier case, <u>Ferrara v. Brown II</u>; the Court may consider all matters that were "considered or should have been considered."  <u>Dall v. Goulet</u>, 871 F. Supp. 518, 522 (D. Me. 1994) (citing <u>Beegan v. Schmidt</u>, 451 A.2d

connected operative facts" and "giving weight to … whether the facts are related in time, space, origin, or motivation," <u>Beegan</u>, 451 A.2d at 654, as the Court must under the transactional test, the Court concludes that Brown's federal complaint presents the same claims that were presented and disposed of in the state court action.

Brown's contention that he has been harassed by Ferrara since the Maine Superior Court's decision in <u>Brown v. Ferrara II</u> does not defeat preclusion. First, Brown presents no facts in his statement of material facts pertaining to harassment by Ferrara after <u>Brown v. Ferrara II</u>. (<u>See</u> Plaintiff's Statement of Material Facts ¶¶ 81-94.) Second, even if Brown had alleged harassment by Ferrara following <u>Brown v. Ferrara II</u>, such allegations do not necessarily defeat preclusion, because preclusion is not necessarily defeated when the second case involves evidence different from the evidence relevant to the first case. <u>Beegan</u>, 451 A.2d at 647 (citing <u>Kradoska v. Kipp</u>, 397 A.2d 562 (Me. 1979)). Indeed, such new evidence can still be considered to arise out of the same aggregate of operative facts.

Moreover, Brown's attempt here to bring numerous additional claims based on the same series of occurrences but under new legal theories – such as RICO and 42 U.S.C. § 1983 – does not escape the effect of claim preclusion. <u>See</u> <u>Dall v. Goulet</u>, 871 F. Supp. 518, 522 (D. Me. 1994) (citing <u>Beegan</u>, 451 A.2d at 647; <u>Kradoska</u>, 397 A.2d at 565). Brown could have brought these claims in state court, but he chose not to. <u>See</u> <u>Kradoska</u>, 397 A.2d at 565 ("[A] plaintiff seeking legal relief must plead all theories of recovery then available to him."). Application of the doctrine of res judicata is justified in this case by concerns for judicial economy and efficiency, the stability of final judgments, and fairness to litigants. As the Maine Supreme Court has stated repeatedly, res judicata "eases both the financial and psychological burdens on a

---

642, 647 (Me. 1982). Accordingly, even if Brown's federal complaint had contained factual allegations not made in state court, claim preclusion still applies because the facts Brown alleges in federal court could have been alleged in state court. <u>See</u> <u>Beegan</u>, 451 A.2d at 644.

defendant, who can rest assured that no one will sue him more than once over the same incident or occurrence."  Beegan, 451 A.2d at 646.  Moreover, "it is fair to the plaintiff … [who] will benefit economically – by saving counsel fees and other litigation expenses – if he consolidates as many of his factual allegations and legal theories as possible into one lawsuit."  Id.

## IV.    CONCLUSION

For the reasons stated herein, Defendant Ferrara's Motion for Summary Judgment (ECF No. 281) is GRANTED.


SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 15th day of June, 2012.

12